**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Nicholas BACHYNSKY,**
**Defendant–Appellant.**

**No. 89–2742.**

United States Court of Appeals,
Fifth Circuit.

Feb. 13, 1991.

Order on Rehearing En Banc
March 25, 1991.

---

Richard B. Kuniansky, Robert I. White, Chamberlain, Hrdlicka, White, Johnson, & Williams, Houston, Tex., for defendant-appellant.

Michael Shelby and Paula C. Offenhauser, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., Thomas M. Gannon, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before GARWOOD and WIENER, Circuit Judges, and VELA *, District Judge.

WIENER, Circuit Judge:

We speculate that, for many who read this opinion, the extreme facts of the instant case and the holding we are constrained to make will cause it to constitute the *reductio ad absurdum* of this circuit's interpretation of Federal Rule of Criminal Procedure 11(c)(1)'s provision on supervised release in the plea colloquy context. Defendant, Nicholas Bachynsky (Bachynsky), B.A., M.A., Ph.D., and M.D.,[1] was convicted on a plea of guilty for conducting the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), and for conspiring to defraud the Internal Revenue Service in violation of 18 U.S.C. § 371. Bachynsky, mastermind of a nationwide health insurance scam, appeals claiming, *inter alia*, that the district court failed to comply with the mandatory provisions of Rule 11. Finding that the district court entirely failed to address a core concern of Rule 11, we have no choice under the binding precedent of this circuit but to vacate Bachynsky's sentence and remand the case to allow him to plead anew.

## I. FACTS AND PROCEEDINGS BELOW

Bachynsky, a Houston physician, and his associates established weight loss and smoke cessation clinics throughout the United States. They attracted many patients to these clinics through extensive advertising. Typically, the clinic performed numerous unnecessary medical tests on clinic patients, and billed the patients' insurance companies. In the cases

of military personnel, the clinic billed the Department of Defense. Bachynsky and his associates also billed the insurance carriers for tests that were never performed. Because most of the medical insurance did not cover weight loss or smoking cessation programs, false diagnoses were submitted to qualify for insurance payments. The total loss resulting from this fraudulent scheme exceeded $15,000,-000.

In October, 1988, a federal grand jury in Houston, Texas, returned an eighty-seven count indictment against Bachynsky, his wife and son, and eighteen other persons on charges arising out of the scheme to defraud insurance companies and the Department of Defense through submission of false medical insurance claims. Initially, Bachynsky pled not guilty, but in January, 1989, after exhaustive plea negotiations, he entered a plea of guilty to Part A of Count I, RICO, and Count 87, conspiracy to defraud the IRS, in exchange for dismissal of all other counts.

The plea agreement stated in part that Bachynsky understood that (1) he was entitled to plead not guilty and stand trial; (2) he was entering his plea freely, voluntarily, and in the exercise of his own judgment; (3) he had received no promises of leniency, or of any other nature, other than those contained in the plea agreement, to induce him to plead guilty;[2] (4) he was not threatened or coerced into pleading guilty; and (5) he would have the opportunity to reject his plea if the court rejected any part of the plea agreement.

In the plea agreement Bachynsky also stated that he was aware of the maximum penalties for both charges and was aware

---

* District Judge of the Southern District of Texas, sitting by designation.

1. Bachynsky stated in his plea hearing and rearraignment that he was 47 years old and in good mental health, and that he held a B.A., M.A., Ph.D. and M.D.

2. After appealing his sentence, Bachynsky filed a motion with this court to remand his case for a limited evidentiary hearing for the purposes of (1) establishing the facts surrounding an alleged "secret package" plea agreement, and (2) establishing that a conflict of interest existed to

support his claim for ineffective assistance of counsel. We carried that motion with the case and address the issues now. The former issue is moot because of our disposition in this case. The latter issue was not raised in this appeal and, in fact, should not be considered on direct appeal, but if at all, then in a motion for post-conviction relief under 28 U.S.C. § 2255, habeas corpus. *See United States v. Higdon*, 832 F.2d 312, 313–14 (5th Cir.1987), *cert. denied*, 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988).

that the district court could impose the maximum sentence allowable under the law. The plea agreement provided further that no statement made by any person as to Bachynsky's sentence was binding on the court, and that neither party would request that the court impose a specific sentence or depart from the Sentencing Guidelines.

At Bachynsky's rearraignment and plea hearing, the district court first informed Bachynsky of the nature of the charges against him. The district court stated the elements of each of the crimes to which Bachynsky pleaded guilty and the maximum penalties for each offense, and then asked Bachynsky whether he understood the elements and penalties associated with each count. Bachynsky responded affirmatively. The court also ascertained that Bachynsky understood the rights he waived by pleading guilty and the consequences of that plea.[3] The court then accepted Bachynsky's guilty plea. At no time, however, did the court personally state to Bachynsky that he could be sentenced to a period of supervised release.

In July 1989, Bachynsky was sentenced to 121 months imprisonment and three years supervised release, and was fined $17,500 on each count. The total time of imprisonment and supervised release was thirteen years and one month; the statutory maximum for Part A Count I, is twenty years. The statutory maximum for Count 87 is five years. The district court also ordered forfeiture of numerous items of property in accordance with the terms of the plea agreement.

Bachynsky timely appeals this sentence claiming, *inter alia,*[4] that reversal of his sentence is required because the district court's failure to "explain in detail" the charges against him, and failure to inform him that he was subject to supervised release as part of his sentence, constituted a complete failure to address a core concern of Fed.R.Crim.P. 11.

## II. ANALYSIS

 Rule 11 addresses three core concerns: (1) whether the guilty plea was coerced, (2) whether the defendant understands the nature of the charges, and (3) whether the defendant understands the consequences of his plea. *United States v. Bernal,* 861 F.2d 434, 436 (5th Cir.1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 203, 107 L.Ed.2d 156 (1989). In this circuit, reversal of the conviction is mandatory if in its plea colloquy with a defendant the trial court wholly or entirely fails to address a core concern of Rule 11. *United States v. Pierce,* 893 F.2d 669, 679 (5th Cir.1990) (citing *United States v. Dayton,* 604 F.2d 931, 939 (5th Cir.1979) (en banc), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980)); *Bernal,* 861 F.2d at 438. In contrast, if the district court gives a "less than letter perfect" or merely inadequate address to a Rule 11 core concern, this court will evaluate such a failure under a harmless error standard focusing on whether the defendant's "substantive rights"[5] were affected. *Bernal,* 861 F.2d at 436 (citing *Dayton,* 604 F.2d at 939); *United States v. Corbett,* 742 F.2d 173, 179 (5th Cir.1984); *see also* Fed.R.Crim.P. 11(h).

**(h) Harmless Error.** Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.

In *Bernal,* we misquoted Rule 11(h) as protecting the defendant's substan*tive* rights, *Bernal,* 861 F.2d at 436, rather than of his substan*tial* rights, Fed.R.Crim.P. 11(h). Later cases that cite or quote *Bernal* perpetuate this error. A careful reading of these cases indicates that this court has used these terms interchangeably in this context. The use of the word substantive instead of substantial in these cases should not be read as changing the meaning of Rule 11(h).

---

**3.** Throughout the extensive meetings, negotiations and exchanges which culminated in Bachynsky's eventual plea agreement, sentence, and this appeal, he was represented by a leading member of the Texas criminal defense bar who is well known to this court. Furthermore, Bachynsky personally participated in the negotiations at various stages of his defense.

**4.** Because of our disposition of this appeal, we need not address Bachynsky's additional arguments.

**5.** Federal Rule of Criminal Procedure, 11(h) provides:

### A. The Nature of the Charges

■ Bachynsky does not claim that the district court failed personally to address him as to the nature of the charges against him. He argues instead that, given the complexity of the charges against him, the court's address was inadequate. Because Bachynsky does not and, in fact, could not argue that the district court "wholly or completely" failed to address this core concern of Rule 11, we consider his claim of inadequate explanation under the harmless error standard. *See Bernal,* 861 F.2d at 436; *Corbett,* 742 F.2d at 179.

As we noted in *Dayton,* this court has not established a mechanical rule to determine whether a trial court has fulfilled its duty to inform the defendant of the nature of the charge and determine that he understands it:

> As for the ... first requirement—that the judge personally inform the defendant of the nature of the charge and determine that he understands it—we are unable to state a simple or mechanical rule but offer some general observations that we hope will be helpful. For simple charges ... a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice. Charges of a more complex nature, incorporating esoteric terms or concepts unfamiliar to the lay mind, may require more explication. In the case of charges of extreme complexity, an explanation of the elements of the offense like that given the jury in its instructions may be required; this, of course is the outer limit, for if an instruction informs a jury of the nature of the charge sufficiently for it to convict the defendant of it, surely it informs the defendant sufficiently for him to convict himself. We can do no more than commit these matters to the good judgment of the court, to its calculation of the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence.

*Dayton,* 604 F.2d at 937–38.

We agree with Bachynsky that the charges to which he pled guilty were complex and that the district court did not explain every facet of each charge. But the purpose of Rule 11 is not to have every detail of the charge read aloud to the defendant; rather, its purpose is to ensure that the defendant adequately understands the charge to which he is pleading guilty, and to have that understanding documented on the record.

Bachynsky is a sophisticated, highly educated defendant represented by highly competent counsel. *Cf. United States v. Carr,* 740 F.2d 339 (5th Cir.1984) (Intelligence, legal representation, and education are factors to consider when determining defendant's understanding of government's factual resumé for guilty plea.). When the court asked if he understood the charges against him, Bachynsky indicated that he understood and that he had discussed the charges with his attorney. Furthermore, Bachynsky had been involved personally in plea negotiations for many months before entering his guilty plea, and acknowledged that he had read the plea agreement and reviewed it with his attorney. Therefore, the record contains ample evidence to show that Bachynsky must have understood the nature of the charges against him so that the district court's less than perfect colloquy did not abridge or prejudice his substantial rights.

### B. Supervised Release

■ It is undisputed that when the district court accepted his plea, it failed totally to inform Bachynsky that he could be subject to a term of supervised release as part of his sentence. Bachynsky does not argue that he was unaware that he could be sentenced to supervised release; neither does he argue that he was prejudiced by the district court's oversight. Bachynsky's only argument is that under *United States v. Molina–Uribe,* 853 F.2d 1193 (5th Cir. 1988), his conviction must be reversed. Under the rule of that case, "[w]hen the district court fails entirely to inform the defendant of the minimum and maximum terms of supervised release, the defendant's 'substantive rights [a]re affected and his plea of guilty ... must be set aside

and he be allowed an opportunity to plead anew.' " *United States v. Andrews*, 918 F.2d 1156, 1159 (5th Cir.1990) (quoting *United States v. Molina–Uribe*, 853 F.2d 1193, 1200 (5th Cir.1988), *cert. denied*, 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989)).

Conceding that the district court failed entirely to address supervised release in its colloquy with Bachynsky, the government urges that Bachynsky's substantive rights were, nevertheless, not adversely affected so that the district court's oversight was "harmless error." The government first argues that given the extensive plea agreement Bachynsky and his counsel negotiated with the government and the time involved in the negotiation, neither the possibility nor the certainty of supervised release could have had any bearing on Bachynsky's ultimate decision to plead guilty. *See, e.g., United States v. Barry*, 895 F.2d 702, 704–05 (10th Cir.1990) (District court's failure to advise defendant of term of supervised release was harmless when failure could not have affected decision to plead guilty.). Second, the government argues that Bachynsky had to know that his plea subjected him to a sentence of supervised release because, when the Presentencing Investigation Report (PSR) was submitted, Bachynsky never objected to the probation officer's recommendation of supervised release as part of Bachynsky's sentence. *See United States v. Carey*, 884 F.2d 547, 549 (11th Cir.1989) (When supervised release was not mentioned by court at plea hearing, but appellant did not object to special release at sentencing, appellant's own conduct indicated he was not harmed by district court's oversight.).

Next, the government observes that even when Bachynsky's 121–month term of imprisonment is added to his three-year term of supervised release, his total possible sentence is well below the statutory maximum of twenty to twenty-five years. Therefore, posits the government, Bachynsky could not have been prejudiced, because he pled guilty knowing he was subject to a maximum term of at least twenty years' incarceration. *See Barry*, 895 F.2d at 705 (When total sentence is less than maximum penalty, defendant is not prejudiced by failure of court to inform him of possible supervised release.); *contra United States v. Blair*, 902 F.2d 323 (5th Cir.1990) (Regardless of whether ultimate sentence including supervised release is less than maximum, total failure to inform defendant of possible sentence of supervised release is reversible error.).

Finally, the government stresses that Bachynsky was a well-educated man, that he personally participated in negotiating for a lengthy plea agreement over a period of several months, that at the plea hearing he admitted his awareness of the maximum penalties for the charges to which he was pleading guilty, and that he was represented by able counsel at all stages of his defense. For these reasons, the government argues, the district court's failure to follow the strict form of Rule 11 did not harm Bachynsky.

Despite all of the government's logically compelling arguments, this panel is bound by circuit precedent that dictates without exception that we reverse the conviction, vacate the sentence, and remand the case to permit the defendant to plead anew when the district court fails entirely to inform the defendant of a possible term of supervised release and the defendant is ultimately sentenced to supervised release. *See Andrews*, 918 F.2d at 1161; *United States v. Reyes–Ruiz*, 868 F.2d 698, 704 (5th Cir.1989). A brief synopsis of the history of this rigid jurisprudential rule indicates why, even in circumstances as extreme as Bachynsky's, we are compelled to squander judicial resources by vacating the defendant's sentence and remanding to allow the defendant a "second bite at the apple."

The holding in *Molina–Uribe* is based on the third core concern of Rule 11: whether the defendant understands the consequences of his plea. *See Molina–Uribe*, 853 F.2d at 1200. In *Reyes–Ruiz*, we interpreted *Molina–Uribe* as standing for the proposition that when the defendant is ultimately sentenced to supervised release, the district court's total failure to advise the defendant of the effect of a term of super-

vised release is a deprivation of the defendant's substantive rights requiring the plea to be set aside. *Reyes–Ruiz*, 868 F.2d at 704. In *Blair*, we reiterated that "failure to inform the defendant of possible supervised release vitiates the guilty plea." *Blair*, 902 F.2d at 324. We also expressly rejected the argument that failure by the district court to inform the defendant of supervised release is harmless error when the court informs the defendant of the maximum penalty without mentioning supervised release, even though the actual maximum term of incarceration—imprisonment plus supervised release—is less than the explained statutory maximum. *Id.*[6]

For purposes of the core concern that the defendant understand the consequences of his plea, Rule 11(c)(1) contains the phraseology[7] that caused this circuit to diverge from other circuits, notably the Ninth and Tenth. The mandatory requirement in Rule 11(c)(1) that the sentencing court advise the defendant and determine his understanding of the "maximum possible penalty provided by law, *including the effect of any special parole term* ..." (emphasis added) is admittedly open to at least two interpretations, depending on the meaning the court ascribes to "including the effect."

The Tenth Circuit in *United States v. Barry*, 895 F.2d 702, 704–05 (10th Cir. 1990), and the Ninth Circuit in *United States v. Sanclemente–Bejarano*, 861 F.2d 206, 210 (9th Cir.1988), read "including the effect of any special parole term" as modifying the immediately preceding phrase, "maximum possible penalty provided by law." In other words, for the Ninth and Tenth Circuits, advice concerning supervised release is only a partial aspect of advice concerning the maximum possible penalty.[8]

By contrast, in *Molina–Uribe* and its progeny, this circuit reads "including the effect of any special parole term" as separating supervised release from prison time as another element about which the sentencing court must personally advise the defendant and determine that he understands. Therefore, under this circuit's interpretation, supervised release is not merely an element that, along with prison time, makes up the "maximum possible penalty provided by law"; rather, it is an entirely separate and distinct element having a significance both equal to and wholly independent of the "mandatory minimum" and "maximum possible" penalty elements.

Thus, when this court narrowly and rigidly interpreted Rule 11(c)(1), we gave supervised release an independent life of its own, separate and apart from maximum sentence, and slammed shut the door to any possible consideration of *harmless error* when the sentencing court failed to mention and explain the effect of supervised release. In *Blair*, we implicitly rejected the Ninth and Tenth Circuits' reading of Rule 11(c)(1), and reiterated this circuit's reading of the Rule that the district court must separately mention and explain the effect of supervised release. Failure to do so, we have held, mandates voiding the plea, even though the failure did not affect the maximum term of incar-

---

**6.** It also appears that we rejected the Advisory Committee's position when it added Rule 11(h) that the harmless error analysis should apply where "the judge understate[s] the maximum penalty somewhat, but the penalty actually imposed did not exceed that indicated in the warnings." Fed.R.Crim.P. 11(h) advisory committee's note (1983 amend.).

**7.** Federal Rule of Criminal Procedure 11 provides in part:
(c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) ... the maximum possible penalty provided by law, including the effect of any special parole or supervised release term....

**8.** The Ninth and Tenths Circuits' position seems to follow that of the Advisory Committee when it amended Rule 11(c)(1) in 1982. The Advisory Committee Notes state that "[t]he amendment [adding the language about special parole] should not be read as meaning that a failure to comply with this particular requirement will inevitably entitle the defendant to relief." Fed. R.Crim.P. 11(c)(1) advisory committee's note (1982 amend.).

ceration explained by the court, or such failure could not possibly have affected the defendant's decision to plead guilty. *See Blair*, 902 F.2d at 324. On any theory other than that supervised release is to be regarded for Rule 11(c)(1) purposes as an element which is separate and distinct from and independent of the mandatory minimum and maximum possible sentence elements, *Blair* is difficult to reconcile with our cases holding that an understatement of the maximum term of supervised release is reviewable under the harmless error rule, *see Reyes–Ruiz*, 868 F.2d 698; *United States v. Lewis*, 875 F.2d 444, 445 (5th Cir.) (special parole), *cert. denied*, —— U.S. ——, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989).

The extreme facts of Bachynsky's case may provide the limelight required for this circuit to reflect on our questionable interpretation of Rule 11(c)(1). We could avoid the untoward results and wastes of judicial resources occasioned by that interpretation if we were to follow the Ninth and Tenth Circuits' interpretation of the "including the effect" phrase of Rule 11(c)(1) instead of reading those words to create the separate "sub-core concern" of supervised release. But, as things stand, we require the district court to refer to and explain the effect of supervised release—irrespective of any otherwise adequate explanation by that court of the maximum term of incarceration—on penalty of having the conviction under the plea reversed and the sentence vacated without regard to the harmless error provision of Rule 11(h).

In essence the sacred cow of maximum term has been delivered of the (possibly illegitimate) sacred calf of supervised release. Unless this court, sitting en banc, should revisit the language of Rule 11(c)(1) and relax the rule of *Molina–Uribe* and its progeny to permit application of the harmless error rule, failure by the sentencing court to mention and explain the effect of supervised release in the plea colloquy will continue to stand as an inflexible command to vacate and remand to permit pleading anew. Because the district court failed personally to utter the talismanic words of supervised release to Bachynsky, we have no leeway to consider the obvious harm-lessness of that omission under the extreme facts presently before us.

For the foregoing reasons, the judgment of the district court is REVERSED, the sentence is VACATED, and the case is REMANDED to permit Bachynsky to plead anew.

## ORDER

March 25, 1991.

Before CLARK, Chief Judge, POLITZ, KING, JOHNSON, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHE, WIENER and BARKSDALE, Circuit Judges.

BY THE COURT:

A majority of the Judges in active service, on the Court's own motion, having determined to have this case reheard en banc,

IT IS ORDERED that this cause shall be reheard by the Court en banc without oral argument. The Clerk will specify a briefing schedule for the filing of supplemental briefs.