934 F.2d 1349
 60 USLW 2107
 UNITED STATES of America, Plaintiff-Appellee,
v.
Nicholas BACHYNSKY, Defendant-Appellant.
 No. 89-2742.
 United States Court of Appeals,
Fifth Circuit.
 June 25, 1991.
 
 Richard B. Kuniansky, Robert I. White, Chamberlain, Hrdlicka, White, Johnson & Williams, Houston, Tex., for defendant-appellant.
 Michael Shelby, Paula C. Offenhauser, Asst. U.S. Attys., Ronald G. Woods, U.S. Atty., Houston, Tex., Thomas M. Gannon, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before CLARK, Chief Judge, POLITZ, KING, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHE, WIENER, BARKSDALE and GARZA, Circuit Judges.
 PER CURIAM:
 
 
 1
 Today we consider whether there may be circumstances under which the harmless error provision of Rule 11(h), Federal Rules of Criminal Procedure, obviates the need to vacate a plea of guilty or nolo contendere even though, during the plea colloquy specified in Rule 11(c)(1) for determining the defendant's understanding of the maximum possible penalty provided by law, the district court fails totally to mention or explain the effect of any supervised release term to which the defendant is exposed. For the reasons set forth below, we respond affirmatively, concluding that a district court's total failure during the plea colloquy to mention or explain the effect of supervised release does not automatically constitute a total failure to address a Rule 11 core concern, and thus does not automatically mandate reversal. Consequently, when a total failure to address supervised release is determined to constitute only a partial failure to address a core concern of Rule 11, the door is open to a determination of whether the district court's failure to explain the effects of supervised release affected the substantial rights of the defendant. It follows that when the district court's error in omitting the supervised release explanation is found not to have affected the defendant's substantial rights, the error may be considered harmless pursuant to Rule 11(h). Finding in the instant case that the district court's error was only a partial or less than perfect addressing of a Rule 11 core concern, which had no effect on Dr. Bachynsky's decision to plead guilty and thus did not affect his substantial rights, we reverse the decision of this court in United States v. Bachynsky (Bachynsky I), 924 F.2d 561 (5th Cir.1991), and remand this appeal to the panel which rendered that decision for further proceedings consistent with this opinion.
 
 I.
 
 2
 BACKGROUND FACTS AND DISTRICT COURT PROCEEDINGS
 
 A. History
 
 3
 Defendant-Appellant Nicholas Bachynsky, B.A., M.A., Ph.D. and M.D.,[1] was convicted on a plea of guilty for conducting the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. Sec. 1962(c), and for conspiring to defraud the Internal Revenue Service in violation of 18 U.S.C. Sec. 371.
 
 
 4
 Houston physician Bachynsky and his associates established phony weight loss and smoking cessation clinics throughout the United States. Dr. Bachynsky masterminded the scam in which the clinics performed innumerable unnecessary medical tests on patients, billing their insurance companies or, in the case of military personnel, the Department of Defense. The insurance carriers and the Department of Defense were also billed for tests that were never performed. As the medical insurance for most patients did not cover weight loss or smoking cessation programs, the clinics also submitted false diagnoses, treatments for which would qualify for insurance payments. The total monetary loss resulting from the scheme exceeded $15 million dollars.
 
 
 5
 In October of 1988, a federal grand jury in Houston returned an 87 count indictment against Dr. Bachynsky, his wife, his son, and eighteen other persons, on charges arising from the scheme to defraud insurance companies and the Department of Defense through submission of false medical insurance claims. Initially Dr. Bachynsky pled not guilty but, in January of 1989, following exhaustive plea negotiations, he entered a plea of guilty to Part A of Count 1, RICO, and Count 87, conspiracy to defraud the IRS. In exchange for Dr. Bachynsky's plea to those charges, the government agreed to dismiss all other counts against him.
 
 B. The Plea Agreement
 
 6
 Dr. Bachynsky's plea agreement stated, inter alia, that (1) he was entitled to plead not guilty and stand trial; (2) he was entering his plea freely, voluntarily and in the exercise of his own judgment; (3) he had received no promises of leniency or of any other nature, except for those contained in the plea agreement, to induce him to plead guilty; (4) he was neither threatened nor coerced into pleading guilty; and (5) he would have the opportunity to reject his plea if the court rejected any part of the plea agreement. That agreement also stated that Dr. Bachynsky was aware of the maximum penalties for both charges to which he was pleading guilty and was aware that the district court could impose the maximum sentence allowable under the law. The plea agreement provided further that no statement made by any person regarding Dr. Bachynsky's sentence would be binding on the court, and that neither Dr. Bachynsky nor the government would request that the court impose a specific sentence or depart from the Sentencing Guidelines.
 
 C. The Plea Colloquy
 
 7
 At Dr. Bachynsky's rearraignment and plea hearing, the district court informed him of the nature of the charges against him; stated the elements of each of the crimes to which he was pleading guilty; stated the maximum statutory penalty for each crime to which he was pleading guilty; and then asked if he understood the elements and penalties associated with each count. Dr. Bachynsky responded affirmatively. The district court also determined that Dr. Bachynsky understood the rights he waived by pleading guilty and the consequences of his plea. The court then accepted Dr. Bachynsky's plea of guilty.
 
 
 8
 Two sets of facts are central to our consideration of this case on appeal: First, at no time during the plea colloquy did the district court personally advise Dr. Bachynsky that his sentence could or would include a period of supervised release, or explain to Dr. Bachynsky the effect of supervised release. Second, throughout the extensive meetings, negotiations and exchanges which culminated in Dr. Bachynsky's plea agreement, he was represented by a leading member of the Texas Criminal Defense Bar who is well known to this court.
 
 D. The Sentence
 
 9
 As a result of his plea, Dr. Bachynsky was eventually sentenced to 121 months (ten years and one month) of imprisonment and three years' of supervised release.[2] Thus the aggregate time of imprisonment and supervised release was thirteen years and one month. But let us assume, arguendo, that Dr. Bachynsky would (1) serve every day of his 121 months' prison term, (2) have his supervised release term extended from three years to five years pursuant to 18 U.S.C. Sec. 3583(d)(2), (3) have his supervised release revoked and be returned to prison on the last day of his supervised release term, and (4) serve every day of his additional time after revocation of supervised release. Even under that "worst case" hypothesis, the total period of elapsed time between his first day in prison and his last would be eighteen years and one month--twenty-three months short of the twenty years' maximum for Part A of Count 1 alone, and six years and eleven months short of the twenty-five years' consecutive statutory maximum--twenty years for Part A of Count 1 plus five years for Count 87. That is so because, despite the theoretically possible extension of his supervised release term from three to five years pursuant to 18 U.S.C. Sec. 3583(d)(2), in actuality Dr. Bachynsky could only be returned to prison for three years following revocation of supervised release rather than five years, because at the time of his sentencing, RICO was a Class B felony under 18 U.S.C. Sec. 3559,[3] and three years is the maximum period of incarceration for which a Class B felon may be returned to prison if his supervised release should ever be revoked. See 18 U.S.C. Sec. 3583(e)(3). For Count 87, a Class C felony, there is a limit of two years' additional incarceration following revocation of supervised release. But prison terms following revocation of supervised release are served concurrently, so three years is the maximum revocation term to which Dr. Bachynsky is exposed.[4]E. The Appeal
 
 
 10
 Dr. Bachynsky timely appealed his sentence claiming, inter alia, that the district court's failure to mention or explain supervised release and to inform him that he could be subjected to supervised release as part of his sentence constituted a complete failure to address a core concern of Fed.R.Crim.P. 11, mandating that his sentence be vacated and his case remanded to permit him to plead anew.[5] With palpable reluctance the panel of this court which heard Dr. Bachynsky's appeal agreed with him that prior Fifth Circuit decisions mandated the vacating of his sentence to permit him to plead anew because the district court had failed to mention supervised release or explain its effect on his maximum possible penalty. Following release of the opinion in Bachynsky I this court on its own motion voted to rehear the appeal en banc without oral argument.
 
 II.
 DISCUSSION
 A. Precedent
 
 11
 The panel opinion in Bachynsky I correctly observed that this circuit interprets Rule 11 as addressing three core concerns: whether the guilty plea was coerced; whether the defendant understands the nature of the charges; and whether the defendant understands the consequences of his plea--and that, in this circuit, the trial court's total failure to address a core concern of Rule 11 in the plea colloquy mandates our vacating the defendant's conviction and remanding his case to the district court in order that he may plead anew. Bachynsky I, 924 F.2d at 564 (citations omitted). The panel also observed our distinction between a total failure to address a core concern of Rule 11 and a merely inadequate addressing of such a concern, noting that in the latter situation we scrutinize the district court's "less than letter perfect" treatment of a core concern under the harmless error standard of Rule 11(h) to determine whether the court's imperfection affected substantial rights of the defendant. Id. (citations omitted). The Rule 11 core concern which we address today is whether the defendant understood the consequences of his plea. This one of the three Rule 11 core concerns is embodied in the text of Rule 11(c)(1):
 
 
 12
 (c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
 
 
 13
 (1) ... the mandatory minimum penalty provided by law, if any, the maximum possible penalty provided by law, including the effect of any special parole or supervised release term....
 
 Fed.R.Crim.P. Rule 11(c)(1).[6]
 
 14
 Clearly, the district court informed Dr. Bachynsky of, and determined that he understood, the maximum possible period of incarceration provided by law, when that court spelled out the statutory maximums of 20 years and 5 years respectively. Just as clearly, however, as that court failed even to mention supervised release, much less explain its effect, the court could not have determined whether Dr. Bachynsky understood the effect of supervised release on his maximum penalty provided by law, even though, as demonstrated above, the effect of supervised release on the sentence imposed could not have generated a greater period of exposure to or sentence of prison time than the statutory maximums. Thus the penultimate question we must answer today is whether the district court totally or only partially failed to address the core concern of the defendant's understanding of the consequences of his plea when the court explained the statutory maximum periods of incarceration under each charge to which the defendant pled without explaining the effect of supervised release. Only if we determine, contrary to present Fifth Circuit law, that the court's failure to mention supervised release after having explained the statutory maximum terms of imprisonment may be merely a partial failure or imperfect addressing of this core concern do we reach the ultimate question of whether, under the facts of this case, the error was harmless.
 
 
 15
 As noted in Bachynsky I, 924 F.2d at 565, Dr. Bachynsky does not argue that he was unaware that he could be sentenced to supervised release or that he was prejudiced by the district court's oversight. Dr. Bachynsky only argues that the absence of such an explanation entitles him to have his conviction reversed and his plea vacated. He cites our holding in United States v. Andrews to support his argument:
 
 
 16
 When the district court fails entirely to inform the defendant of the minimum and maximum terms of supervised release, the defendant's "substantive rights [a]re affected and his plea of guilty ... must be set aside and he be allowed an opportunity to plead anew."
 
 
 17
 918 F.2d 1156, 1159 (5th Cir.1990) (quoting United States v. Molina-Uribe, 853 F.2d 1193, 1200 (5th Cir.1988), cert. denied, 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989)).
 
 
 18
 In acknowledging the correctness of Bachynsky's position under the binding precedent of this court, the panel observed that the significant jurisprudential link between Molina-Uribe and Andrews is United States v. Reyes-Ruiz, 868 F.2d 698 (5th Cir.1989). See Bachynsky I, 924 F.2d at 566. In Reyes-Ruiz we held that when a defendant is sentenced to supervised release following the district court's total failure during the plea colloquy to advise the defendant of the effect of supervised release, the defendant's substantive rights are, as a matter of law, so affected as to require vacating the plea. Reyes-Ruiz, 868 F.2d at 704. We reiterated that rule in United States v. Blair, 902 F.2d 323, 324 (5th Cir.1990), stating that "failure to inform the defendant of possible supervised release vitiates the guilty plea." Moreover, in Blair we expressly rejected the government's argument that, when the district court informs the defendant of the maximum penalty but fails totally to mention supervised release, the error could be deemed harmless if the maximum term of imposed incarceration--imprisonment plus supervised release--is less than the explained statutory maximum. Id.
 
 
 19
 As a result of the extreme deference we have heretofore afforded supervised release in the context of the plea colloquy, we have effectively elevated a partial failure to address a core concern of Rule 11 to the rank of a total failure. Again, the core concern in this instance is that the defendant understand the consequences of his plea. On its face, a plea colloquy in which the judge informs the defendant of the statutory maximum period of incarceration, and determines that the defendant understands such maximum, cannot properly be labeled a total failure to address the core concern in question. Supervised release is only one component of one element of one core concern, not a separate and distinct core concern in and of itself. Consequently, if, after dutifully informing and explaining the statutory maximum prison sentence to the defendant, the district court fails to mention the effect of supervised release, the district court's compliance with the "maximum possible penalty" element of Rule 11(c)(1) is at worst a partial failure.
 
 
 20
 But, irrespective of how logical and obvious this observation might appear, the bright line rule of our Molina-Uribe--Reyes-Ruiz--Blair--Andrews line of cases is to the contrary. Those cases leave no doubt but that, irrespective of the district court's mention and explanation of the statutory maximum penalty, the court's failure also to mention and explain the effect of supervised release is fatal. We have held repeatedly that that single omission mandates reversing the defendant's conviction and vacating his guilty plea. In essence, we so sanctified the supervised release element of Rule 11(c)(1) that it became the functional equivalent of a full blown core concern.
 
 B. Plain Language of the Rule
 
 21
 Our previous treatment of supervised release in the plea colloquy, under Molina-Uribe and its progeny, is difficult if not impossible to square with the plain, unambiguous language of Rule 11(c)(1).[7] That difficulty is underscored when Rule 11(c)(1) is read in the perspective of our jurisprudentially recognized total failure--partial failure dichotomy, as well as when the supervised release requirement is viewed in pari materia with the entire text of Rule 11(c)(1).
 
 
 22
 After paragraph (c) of Rule 11 sets forth the colloquy requirement that the court address the defendant personally in open court and inform him of and determine that he understands the consequences of his plea, subparagraph (c)(1) specifies two of the basic elements that compose the substance of this "core concern": the mandatory minimum penalty provided by law, if any; and the maximum possible penalty provided by law.[8]
 
 
 23
 Subparagraph (1) of Rule 11(c) does not supply additional content to the first element of "consequences," i.e., the mandatory minimum penalty. That subparagraph does, however, supply additional content for the second element--maximum possible penalty provided by law. In using the word "including" following the maximum penalty element, the redactors of Rule 11 supplied additional content to that element in the form of a non-exclusive sublisting of some of the components of maximum penalty. The components thus listed are (a) the requirement that the court consider any applicable sentencing guidelines but may depart from those guidelines under specified circumstances, (b) the authority of the court to order the defendant to make restitution to any victim of the offense, and (c) the effect of any supervised release term on the maximum penalty. Obviously component (c) is the one with which we are here concerned.
 
 
 24
 Because the list of maximum penalty components called to the attention of the district court is introduced by the word, "including," Rule 11(c)(1) clearly contemplates the possibility that the maximum penalty element may comprise additional components as well. For example, that non-exclusive list does not mention fines or forfeitures but both were clearly components of the "maximum penalty" to which Dr. Bachynsky was exposed and eventually sentenced.
 
 
 25
 In our present effort to return supervised release to its proper perspective, we underscore the importance of the syntax of Rule 11(c)(1). We note first that the phrase beginning with "including" can only be read to modify or explicate the one element, "maximum possible penalty provided by law," which is preceded by a comma and followed by the "including" phrase. Thus the "including" phrase lists some of the components of maximum penalty[9] but does not supply components of statutory minimum--or of the nature of the charge for that matter.
 
 
 26
 We cannot exclude the possibility that our prior decisions may have inadvertently misread "including" to relate all the way back to Paragraph (c)' § "inform the defendant of, and determine that the defendant understands...." But that simply cannot be a correct interpretation, given the use and placement of "including" and the punctuation of that part of Rule 11. Properly, the "including" phrase can only be read to modify "maximum possible penalty provided by law."
 
 
 27
 Such a parsing of the portion of Rule 11's language that defines the role of supervised release in the plea colloquy confirms that supervised release is but one of three or more components of but one of the elements which the court must satisfy itself that the defendant understands for the court to comply with the core concern of the defendant's comprehension of the consequences of his plea. So, if we were to restrict our examination to the clear wording of Rule 11(c)(1) in determining whether failure to mention or explain supervised release to Dr. Bachynsky was a total failure to address the core concern in question or merely a partial, less than perfect address of that core concern, the answer would be obvious: The core concern was partially and thus imperfectly addressed, but was not left totally unaddressed. By itself, the court's failure to refer to or explain the effect of supervised release simply could not have been more than a partial failure to address the core concern that the defendant understand the consequences of his plea.
 
 C. Bachynsky I
 
 28
 Dr. Bachynsky complained of two omissions from the Rule 11(c)(1) plea colloquy: the nature of the charge to which his plea was offered; and maximum possible penalty, specifically the effect of supervised release. He did not allege failure of the district court to determine his understanding of any mandatory minimum penalty provided by law. Regarding maximum penalty, he did not allege failure of the district court to mention the requirement that it consider applicable sentencing guidelines; its authority to depart from those guidelines under certain circumstances; or its authority to order him to make restitution. Neither did Dr. Bachynsky allege that the district court failed to explain any components of his maximum penalty not listed in subparagraph (1) of Rule 11(c), such as fines and forfeiture of property.
 
 
 29
 In Bachynsky I, the panel properly analyzed and rejected Dr. Bachynsky's contention that the court failed to determine his understanding of the nature of the charges to which he pled. Bachynsky I, 924 F.2d at 565.[10] So, again, we are left to consider today only the district court's inadvertent omission of reference to and explanation of the effect of supervised release as a basis for vacating Dr. Bachynsky's plea.
 
 
 30
 Were it not for this court's strict rule of stare decisis which prohibited the Bachynsky I panel from considering Bachynsky's claim outside of the strictures of Molina-Uribe and its progeny, the panel would have been free to decide the issue before it solely on the basis of the plain and unambiguous wording of Rule 11(c)(1). We are satisfied that, had that been the case, the district court's failure to mention supervised release would at most have been found to be a partial failure to address the subject core concern. Such a finding, in turn, would have opened the door for the panel to consider whether, under the facts and circumstances of this case, that partial failure so affected Dr. Bachynsky's substantial rights as to immunize his claim against the harmless error provisions of Rule 11(h). The tone of the panel's decision satisfies us that it would have found the error harmless.
 
 D. Advisory Committee
 
 31
 This circuit's prior determinations that the district court's omission of reference to and explanation of supervised release requires vacating the sentence, the same as would a total failure to address a Rule 11 core concern, are in direct conflict with the position of the Advisory Committee. When Paragraph (h) was added to Rule 11, the Advisory Committee indicated by example that the harmless error analysis should apply when "the judge understated the maximum penalty somewhat but the penalty actually imposed did not exceed that indicated in the warnings." Fed.R.Crim.P. 11(h) advisory committee's note (1983 amend.). Had we followed the committee's advice in our earlier cases, we would have permitted the testing of plea colloquies for harmless error under Rule 11(h), regardless of the failure of the district court to mention and explain supervised release, as long as (1) the district court had informed the defendant and determined his understanding of the statutory maximum term of incarceration, and (2) the combined terms of incarceration and supervised release actually imposed had not exceeded the explained and understood maximum period of incarceration under the statute.
 
 
 32
 We are not unmindful of the jurisprudential phylogeny of our automatic reversal rule, with its genesis in United States v. Dayton, 604 F.2d 931 (5th Cir.1979) (en banc), cert. denied, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). The government argues, not unpersuasively, that the adoption of 11(h) subsequent to Dayton effectively eliminated automatic reversal, even for a total failure to satisfy core concerns of Rule 11. But, because we determine today that we are dealing with only a partial failure to address a core concern of Rule 11, we do not reach the issue of whether the adoption of Rule 11(h) overruled Dayton and, for that matter, McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the Supreme Court's automatic reversal case upon which our Dayton case was grounded. We must leave that question for the day when a total failure to satisfy a core concern of Rule 11 is squarely presented to this court. For now, we reiterate our statement in United States v. Corbett, 742 F.2d 173, 178 n. 14 (5th Cir.1984), supporting Dayton, that "non-compliance with the post-McCarthy requirements of Rule 11 and 'inadequate addresses' of the core concerns that do not rise to the level of 'entire failures' do not require automatic reversal."
 
 E. Other Circuits
 1. Tenth Circuit
 
 33
 When entering his guilty plea pursuant to a plea agreement, the defendant in United States v. Barry, 895 F.2d 702 (10th Cir.1990), was advised by the court of the maximum penalty for the crime (40 years' imprisonment and a $2 million fine, and that he would be required to pay a special assessment of $50.00 to the victims' impact fund), but was not advised that if he was sentenced to prison he would be sentenced to a term of supervised release. He was subsequently sentenced to a term of six years' imprisonment and placed on supervised release for an additional period of five years. Writing for the court, Chief Judge Holloway acknowledged that the "sole issue on appeal, therefore, is whether the district court's failure to advise appellant at his plea hearing of the mandatory period of supervised release ... requires us to set aside the guilty plea in the circumstances of this case. We hold that it does not and affirm." Barry, 895 F.2d at 703. The Barry court found that the district court did commit error in failing to mention and explain the effect of supervised release. But that court concluded it need not vacate Barry's conviction and sentence "unless [Barry's] 'substantial rights' have been affected." Barry, 895 F.2d at 704 (citing and quoting Fed.R.Crim.P. 11(h)). After observing that the district court had advised the defendant that he would be sentenced under the Sentencing Guidelines and determining that the defendant's attorney had discussed the guidelines with his client and was satisfied that the client understood how the guidelines might apply to his case, the Barry court held that the defendant's substantial rights had not been detrimentally affected. Ironically, the Tenth Circuit cited our opinion in Reyes-Ruiz, for the proposition that "failure to fully comply with the requirements of Rule 11 does not warrant reversal if the failure was not 'likely to have been a material factor affecting petitioner's decision to plead guilty'." Id. (quoting Reyes-Ruiz, 868 F.2d at 703). The Tenth Circuit then stated that it was not convinced that the district court's error could have had a significant influence on appellant's decision to plead guilty so that, on the facts before the appellate court, the failure of the district court to comply fully with the requirements of Rule 11 did not warrant reversal.
 
 2. Ninth Circuit
 
 34
 The Ninth Circuit's position accords with that of the Tenth Circuit as set forth in Barry. In United States v. Sanclemente-Bejarano, 861 F.2d 206 (9th Cir.1988), the Ninth Circuit noted that the trial court had engaged in a "lengthy colloquy" with the defendant, advising him of a mandatory minimum prison term of ten years and a maximum possible prison term of life, but neglecting to add that any sentence under the crime to which the plea was entered had a mandatory term of supervised release of at least five years following incarceration.
 
 
 35
 During the plea colloquy there had been a brief exchange between the court and counsel for the defendant in which mandatory supervised release was mentioned. On appeal the defendant sought to have his plea vacated for the district court's failure under Rule 11(c)(1) to advise defendant of the effect of any special parole term. The Ninth Circuit found that the district court had erred in failing to address the defendant and inform him of, and determine that he understood, the effect of any special parole term. Nevertheless, the Sanclemente-Bejarano court concluded that the district court's error was harmless under Rule 11(h) because that court had determined that the defendant understood that the maximum possible sentence was life imprisonment while the sentence he received was fifteen years in prison plus a five-year term of supervised release. The Ninth Circuit held that under those circumstances no prejudice resulted to the defendant from the district court's failure to mention and explain to the defendant the effect of supervised release, so the error was harmless. Sanclemente-Bejarano, 861 F.2d at 210. The court relied in part on the portion of the Advisory Committee's Notes concerning the amendments to Rule 11 that added subsection (h), observing that "[i]n short, the Notes state, 'An error is harmless where it appear[s] the nature and extent of the deviation from Rule 11 [is] such that it could not have had any impact on the defendant's decision to plead or the fairness in now holding him to his plea'." Id. (quoting Fed.R.Crim.P. 11(h) advisory committee's note (1983 amend.)). Of interest is the Ninth Circuit's rejection of the government's argument that the exchange between the court and defense counsel satisfied Rule 11(c)(1)'s required explanation, the court observing that Rule 11(c) requires the district court to address the defendant personally.
 
 3. Eighth Circuit
 
 36
 The Eighth Circuit reached the same conclusion in United States v. McGeehan, 824 F.2d 677 (8th Cir.1987), cert. denied, 484 U.S. 1061, 108 S.Ct. 1017, 98 L.Ed.2d 982 (1988). On the strength of the 1983 amendment that adopted Rule 11(h), and the Advisory Committee's observations as cited by the Ninth Circuit in Sanclemente-Bejarano, the Eighth Circuit first rejected automatic reversal then found harmless the district court's error in failing to refer to special parole in the context of maximum penalty because "the sentence actually imposed ... did not exceed the varying amount [the defendant] was told he could receive." McGeehan, 824 F.2d at 680.
 
 F. Revised Rule for the Fifth Circuit
 
 37
 Having re-evaluated the clear language of Rule 11(c)(1) and (h) in light of the Advisory Committee's Notes and the reasoning of three other circuits, we now hold that when, during the plea colloquy, the court complies with Rule 11(c)(1) to the extent of informing the defendant and determining his understanding of, inter alia, the maximum penalty under the statute but fails entirely to inform the defendant and explain the effect of any supervised release term--and the defendant's sentence in fact includes supervised release--the error thus committed does not necessarily mandate reversing the conviction and vacating the sentence, assuming the aggregate maximum period of incarceration under the actual sentence of imprisonment and supervised release cannot exceed the statutory maximum explained to the defendant.[11] Unless the failure to explain supervised release is exacerbated by other errors in or omissions from the plea colloquy, omission of the supervised release explanation produces only an inadequate or less than perfect address of the "understands the consequences of his plea" core concern of Rule 11. When that situation occurs "this court will evaluate such a failure under a harmless error standard focusing on whether the defendant's 'substantive rights' were affected." United States v. Bernal, 861 F.2d 434, 436 (5th Cir.1988), cert. denied, --- U.S. ----, 110 S.Ct. 203, 107 L.Ed.2d 156 (1989) (citing United States v. Dayton, 604 F.2d 931, 939 (5th Cir.1979) (en banc), cert. denied, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980)); see also Fed.R.Crim.P. 11(h).
 
 III.
 HARMLESS ERROR RULE APPLIED TO BACHYNSKY
 
 38
 Under our holding today, the district court's error in failing to mention or explain the effect of supervised release during its plea colloquy with Dr. Bachynsky was only a partial failure to address Rule 11's core concern that the defendant understand the consequences of his plea. The combined effect of Dr. Bachynsky's prison sentence and term of supervised release is less than the statutory maximum prison sentence he could have received, as properly explained to him by the district court personally during the plea colloquy. Consequently, the district court's error in only partially addressing a core concern of Rule 11 is properly tested under the harmless error standard of Rule 11(h). We therefore examine the facts and circumstances of the instant case to see if the district court's flawed compliance with the maximum penalty component of Rule 11(c)(1) may reasonably be viewed as having been a material factor affecting Dr. Bachynsky's decision to plead guilty. See Reyes-Ruiz, 868 F.2d at 703 (quoting Keel v. United States, 585 F.2d 110, 116 (5th Cir.1978) (en banc) (Rubin, J., concurring)).
 
 
 39
 Again, Dr. Bachynsky is a sophisticated, highly educated defendant represented by very competent counsel. Although he may not have been involved in face-to-face meetings with the government, Dr. Bachynsky appears to have been in close contact with counsel on each give-and-take exchange throughout the months of plea negotiations that led eventually to the signing of his plea agreement and entering of his guilty plea. Dr. Bachynsky acknowledged that he had read the plea agreement and had reviewed it with his attorney. Although Dr. Bachynsky objected to many aspects of the Presentence Investigation Report, he registered neither surprise nor objection when supervised release was mentioned in that report. Only belatedly has Dr. Bachynsky claimed that he was unaware that he could be sentenced to supervised release and that he would not have entered his guilty plea if the district court had explained the effect of supervised release.[12]
 
 
 40
 When today we modify our interpretation of Rule 11(c)(1) to permit examination for harmless error under Rule 11(h), the underpinnings are removed from Bachynsky's insistence that his sentence be vacated. Viewed in light of all of the facts and circumstances of this case, there can be no doubt but that Dr. Bachynsky's substantive rights were unaffected by the district court's error and that the district court's omission was not a material factor affecting Dr. Bachynsky's decision to plead guilty. We find that in this instance the error was indeed harmless and that vacating Dr. Bachynsky's sentence to allow him to plead anew is not warranted.
 
 IV.
 CAVEAT
 
 41
 Our decision today should be viewed by this circuit's criminal defense bar as a caution not to "lie behind the log" in hopes of getting a second bite at the plea bargain apple when and if counsel should notice an inadvertent omission in the district court's plea colloquy. Conversely, our decision should not be interpreted by prosecutors or district courts as a signal to relax their dedication to total compliance with all provisions of Fed.R.Crim.P. Rule 11, particularly those of section c(1). To the contrary, this court has no intention of abdicating its obligation to scrutinize plea colloquies for adherence to Rule 11. We do nothing more today than join our colleagues on the Eighth, Ninth and Tenth Circuits in recognizing that, in the absence of other compounding errors or omissions, failure of the district court to mention and explain the effects of supervised release is a partial rather than a total failure to address a core concern of Rule 11, leaving open the door to further consideration of whether, in light of all relevant facts and circumstances, the district court's error failed to affect the defendant's substantial rights and thus was harmless error, obviating the need to vacate the sentence, reverse the conviction, and remand the case to the district court to allow the defendant to plead anew.
 
 V.
 CONCLUSION
 
 42
 When, in Dr. Bachynsky's plea colloquy, the district court explained the statutory maximum penalties for the offenses to which the doctor was pleading guilty but failed to mention or explain the effect of supervised release, the court's address of the Rule 11 core concern that the defendant understand the consequences of his plea was "less than letter perfect." But that colloquy did not leave this core concern totally unaddressed. Consequently, we are free to examine the district court's omission under the harmless error provisions of Rule 11(h) to determine whether the partial failure occasioned by the district court's imperfect treatment of maximum penalty affected substantial rights of the defendant. In light of the facts and circumstances articulated above, including, without limitation, Dr. Bachynsky's extensive education; his sophistication; his cleverness in confecting and masterminding the nationwide health insurance scam; his considerable interfacing with his most able defense counsel in the negotiation of the lengthy and complicated plea agreement; and the plea colloquy's substantial compliance with the remaining requirements of Rule 11, we are satisfied that the district court's error could not have had any impact whatsoever on Dr. Bachynsky's decision to plead guilty pursuant to his plea agreement.
 
 
 43
 We hasten to add, however, that under significantly less imposing facts and circumstances, we might well find that a district court's failure to explain supervised release does affect substantial interests of a defendant and thus is not harmless error, even though that omission might constitute only a partial failure to address a core concern of Rule 11. We repeat for emphasis that a determination by this court that a failure to address an element or component of Rule 11 as partial does nothing more than leave open the door to test that error for harmlessness. A determination that such a failure is partial does not automatically make it harmless.
 
 
 44
 For the foregoing reasons we hold,as did the panel in Bachynsky I, that the district court committed no error in connection with Rule 11(c)(1)'s requirement that it inform the defendant of the nature of the charges to which he offered his plea; but, unlike the panel which was bound by the precedent of our prior decisions, we hold that under the circumstances of this case the district court's failure to explain the effects of supervised release during the plea colloquy with Dr. Bachynsky was harmless error. As our reversal of Bachynsky I, however, revitalizes others of Dr. Bachynsky's assignments of error, consideration of which was pretermitted by the panel's preemptive reversal of the district court on the basis of our prior jurisprudence which we now reverse, we REMAND this case to the Bachynsky I panel for consideration of those of Dr. Bachynsky's assignments of error which were not previously considered on appeal. To the extent that our prior decisions, such as Molina-Uribe, Reyes-Ruiz, Blair and Andrews, are inconsistent with our holding today, they are overruled.[13]
 
 
 
 [1]
 Dr. Bachynsky stated in his plea hearing and re-arraignment that he was 47 years old and in good mental health, and that he held those college and graduate degrees
 
 
 [2]
 Dr. Bachynsky was sentenced to 121 months' imprisonment and 3 years' supervised release on Count 1, and to 60 months imprisonment and 3 years' supervised release on Count 87 to run concurrently with the sentence imposed on Count 1. Dr. Bachynsky's sentence also included fines of $17,500 on each count as well as forfeiture of numerous items of property in accordance with the terms of the plea agreement. Dr. Bachynsky does not allege on appeal that the court omitted reference to fines or forfeitures from the plea colloquy
 
 
 [3]
 18 U.S.C. Sec. 3559 was subsequently amended to make RICO a Class C felony
 
 
 [4]
 Dr. Bachynsky's reliance on the Ninth Circuit's analysis in United States v. Sharon, 812 F.2d 1233 (9th Cir.1987) is misplaced. He cannot succeed on the specious argument that we should consider the maximum term of 5 years for Count 87 separately from the 20 years for Part A of Count 1. Neither can he compare his situation to Sharon's because, under Dr. Bachynsky's sentence, he can never serve the 20 year maximum of Part A, Count 1, much less the 25 years to which he could have been sentenced had the district court imposed consecutive statutory maximum prison terms
 
 
 [5]
 Dr. Bachynsky claimed that the district court committed two errors in connection with Rule 11(c)(1), one being failure to explain the effect of supervised release, which we consider here, and the other being failure to inform him of the nature of the charges to which he offered his plea. The "nature of the charges" issue was addressed in Bachynsky I, 924 F.2d at 565, and we adhere to that disposition. Dr. Bachynsky also proffered numerous other alleged points of error, none of which were addressed in Bachynsky in light of the disposition of the case in his favor under Fed.R.Crim.P. 11(c)(1). Those other allegations of error will be considered by the original panel of this court on remand
 
 
 [6]
 Mandatory minimum sentences are not under consideration here, but Rule 11(c)(1) also lists consideration of applicable sentencing guidelines and restitution as elements which the district court is to include in the plea colloquy regarding maximum penalty. But Dr. Bachynsky did not allege on appeal that those elements were omitted from the colloquy
 
 
 [7]
 (c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands the following:
 (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term.... (emphasis added)
 
 
 [8]
 See supra note 7 (emphasized portion)
 
 
 [9]
 Inasmuch as the rule says "penalty" and not term, the "maximum possible penalty" element is more extensive than mere incarceration time; it includes, without limitation, fines, restitution, forfeitures and supervised release
 
 
 [10]
 See note 5 supra
 
 
 [11]
 We do not address whether in instances not within this assumption reversing the conviction and vacating the plea will always be necessary or whether there may be circumstances in which a reduction of the sentence (for example, by removing or reducing the term of the supervised release) may eliminate the prejudice, or might do so if accompanied by a hearing adequately establishing that the incomplete Rule 11(c)(1) advice did not affect the decision to plead guilty
 
 
 [12]
 One week before this court met en banc to reconsider the instant case, Dr. Bachynsky was granted permission to supplement the record on appeal pursuant to Loc.R. 27.1.8, submitting a motion to that effect with various attachments including his affidavit of March 10, 1991, and correspondence with counsel. The contents impress this court as nothing more than disingenuous hindsight quickly confected at the eleventh hour in light of his perceptions, based on the panel opinion and correspondence with able counsel, of the right thing to say to dissuade this court from finding harmless error. Not only does he, like Hamlet's lady, protest too much; he protests too late and too implausibly
 
 
 [13]
 We reject Dr. Bachynsky's suggestion that today's abandonment of our prior automatic reversal rule should be prospective only. Prospective application is not required by due process. To suggest that Dr. Bachynsky somehow relied on our prior jurisprudence under Rule 11 when he entered into his plea agreement and pled accordingly--before the omission of reference to supervised release--is indeed ludicrous. See, e.g., United States v. Lane, 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986); United States v. Mechanik, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)