**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Juan Manuel REYES–RUIZ,
Defendant–Appellant.**

**No. 88–1632
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

March 13, 1989.

---

Alfredo Villarreal, Asst. Federal Public Defender, San Antonio, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., Sidney M. Glazer, Washington, D.C., for plaintiff-appellee.

Before POLITZ, JOHNSON, and JOLLY, Circuit Judges.

JOHNSON, Circuit Judge:

Juan Manuel Reyes–Ruiz was sentenced to twenty-four months' imprisonment after he entered a plea of guilty to one count of aiding and abetting the transportation of illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(B) and Title 18 U.S.C. § 2. Reyes appeals to this Court on two grounds: first, he argues that the district court misapplied the sentencing guidelines; second, he claims that the sentence should be vacated due to the district court's failure to comply with the strictures of Rule 11. Because we determine that no reversible error has been shown, we affirm.

## I. FACTS AND PROCEEDINGS BELOW

The facts summarized in the plea proceedings indicate that co-defendant Aniceto Escobedo–Gallardo was the employer of Celestine Rodriquez–Soto, a Mexican citizen. Escobedo arranged for Rodriquez and

others to illegally enter the United States. On April 29, 1988, Escobedo and the defendant, Reyes, smuggled the aliens into the United States in the back of a pickup truck. The hidden aliens were discovered under a tarp by a border patrol agent. Reyes was arrested, and at that time he admitted that he was transporting aliens illegally. Reyes was later indicted on three counts of aiding and abetting the transportation of illegal aliens. The Government dismissed two counts in exchange for a guilty plea to Count One.

The Presentence Investigation Report prepared by the probation officer indicated that the possible term of imprisonment under the Sentencing Guidelines ranged from eighteen to twenty-four months.[1] Reyes filed a specific written objection to the presentence report, arguing that the correct imprisonment range was twelve to eighteen months. In his view, the presentence report was in error because it reflected an incorrect offense level computation. The district court, at the sentencing hearing, overruled this objection, and sentenced Reyes to twenty-four months in prison.

## II. APPLICATION OF THE SENTENCING GUIDELINES

The Sentencing Guidelines were developed to promote the express purpose of eliminating disparate sentences among defendants with similar records who have been found guilty of similar conduct. The guidelines, however, were structured so as to maintain sufficient flexibility to ensure that certain aggravating and mitigating circumstances could be considered by the sentencing judge. In order to achieve this goal, the primary focus is on the crime committed, rather than on the individual offender. Once applied, the guidelines provide a framework within which the judge can impose a sentence.

The cornerstone of this framework is the determination of the base offense level. This is determined by finding the guideline section most applicable to the statute of conviction. In the instant case, the statute of conviction was 8 U.S.C. § 1324. The appropriate guideline section is § 2L1.1, "Smuggling, Transporting, or Harboring an Unlawful Alien," which corresponds to a base offense level of 9. Base offense levels may be adjusted upward or downward depending on the presence of certain Specific Offense Characteristics. Section 2L1.1(b)(2) indicates that if the "defendant previously has been convicted of smuggling, transporting, or harboring an unlawful alien, or a related offense, increase by 2 levels." Pursuant to this subsection, the presentence report adjusted the offense level upward to 11 due to a prior conviction of aiding and abetting illegal aliens. Finally, pursuant to section 3E1.1(a), the report reduced the offense level by two due to a finding that Reyes had accepted responsibility for his criminal behavior.

The defendant's criminal history is calculated independently of the offense level. Points are assigned to prior convictions depending on the length of the sentence and when the crime was committed. Based on these points, the defendant is assigned one of six different categories. The final sentencing range is calculated by applying a table which cross-references the offense level and the defendant's criminal history category. The criminal history portion of Reyes's presentence report listed four prior convictions.[2] The report computed a criminal history score of 8 pursuant to guideline section 4A1.1(b). Two points were subsequently added because the instant offense was committed less than two years after Reyes was released from prison for the September 14, 1987, offense. Reyes's ten criminal history points corresponded with Criminal History Category V. This criminal history category combined with the offense level to result in a potential sentence under

1. The probation officer applied the guidelines promulgated by the United States Sentencing Commission. *See* 18 U.S.C. § 3553(a).

2. Specifically, the report reflected a six months' sentence for illegal entry on August 15, 1985; a 179 day sentence for illegal entry on February 26, 1986; two consecutive 179 sentences for the two cases of aiding and abetting illegal aliens; and a 179 day sentence for illegal entry on September 14, 1987.

the guidelines of eighteen to twenty-four months.

Reyes objected to the computation of the offense level contained in the report. He argued that the offense level was inappropriately increased two levels, making the sentencing range eighteen to twenty-four months, for the offense level of 9, rather than twelve to eighteen months for an offense level of 7. Specifically, Reyes asserted that the Offense Level Computation paragraph of the presentence report

> is incorrect as it states that the Defendant was previously convicted of illegally bringing in aliens into the United States. A review of Defendant's criminal history reveals that the Defendant has three convictions for the petty offense of illegal entry and one conviction for the petty offense of aiding and abetting the illegal entry of an alien. In order to increase the base offense level by two levels a defendant must have previously been convicted of: (1) smuggling aliens, or (2) transporting aliens, or (3) harboring aliens, or (4) aiding and abetting, conspiring or attempting to commit such offenses.
>
> The Defendant has no convictions that cause the base level offense to be increased by two levels.

Defendant's Objections to the Presentence Report, Record Vol. 1 at 28.

The district court, at the sentencing hearing, overruled the objection. On appeal, Reyes reiterates his contention that the offense level was erroneously raised two levels. He contends that the "sentencing court's implied finding of fact that Defendant had a prior conviction for an offense comprehended by Guideline § 2L1.1(b)(2) was clearly erroneous." Appellant's Brief at 7.

Our review of the sentence imposed by the district court is governed by 18 U.S.C. § 3742(d):

> (d) **Consideration.**—Upon review of the record, the court of appeals shall determine whether the sentence—
>
> (1) was imposed in violation of law;
>
> (2) was imposed as a result of an incorrect application of the sentencing guidelines;
>
> (3) is outside the range of the applicable sentencing guideline, and is unreasonable, having regard for—
>
> (A) the factors to be considered in imposing a sentence, as set forth in chapter 227 of this title; and
>
> (B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); or
>
> (4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous.

 To the extent that this appeal deals with express or implied findings of fact, such as whether the defendant had a prior conviction of the kind comprehended by section 2L1.1(b)(2), we apply the clearly erroneous standard of review. However, on the question of law as to whether a given prior conviction falls within the scope of section 2L1.1(b)(2), our review is de novo. We cannot say that the district court's implied finding of the existence of a conviction for aiding and abetting the illegal entry of aliens was clearly erroneous;[3] consequently, we turn to the question

---

**3.** Paragraphs 24 through 27 of the presentence report indicate the prior criminal convictions used in calculating the criminal history points. Specifically, three convictions for "Illegal Entry," and a notation concerning a conviction for "Aiding/Abetting Illegal Aliens (2 cases)." Paragraph 16, which adjusts the base offense level due to the presence of enumerated specific offense characteristics, indicates that "the Defendant previously has been convicted of bringing

illegal aliens into the United States," and adjusts to offense level upward by 2.

In his brief, Reyes complains that the presentence report's criminal history section does not indicate what he was aiding or abetting the illegal aliens in doing. Appellant's Brief at 6. However, because paragraph 16 expands on that conviction, indicating that the appellant aided and abetted their *entry*, and because defendant's own Objections to the Presentence Report indi-

of whether or not such a conviction falls within the scope of section 2L1.1(b)(2) so as to require an upward adjustment of the offense level.

■ Reyes argues that even if he had a prior conviction of aiding and abetting the illegal entry of another, the upward adjustment in the offense level was not proper. The issue we are called upon to resolve is whether aiding and abetting the illegal entry of another in violation of 8 U.S.C. § 1325 is a "related offense" to smuggling, transporting, or harboring an unlawful alien. For the reasons set forth below, we determine that it is.

The Commentary to section 2L1.1(b)(2) indicates that " 'Convicted of smuggling, transporting, or harboring an unlawful alien, or a related offense' includes any conviction for smuggling, transporting, or harboring an unlawful alien, and any conviction for aiding and abetting, conspiring or attempting to commit such offense." The guidelines further indicate that the term "includes" indicates a non-exhaustive list. Guideline 1B1.1. Reyes argues that the term "related offense" was used in a "restrictive," rather than an expansive manner. In support of this proposition, he points to the Background portion of the Commentary to section 2L1.1 which indicates that a "second specific offense characteristic provides an enhancement if the defendant was previously convicted of a similar offense." Reyes interprets this language as indicating that the adjustment "does not apply unless the prior conviction is related, and similar." Appellant's Brief at 8. He argues that the Commission in-

tended to include in this specific offense characteristic the offenses of aiding or assisting a subversive alien to enter in violation of 8 U.S.C. § 1327 and importing an alien for immoral purposes in violation of 8 U.S.C. § 1328. In support of this assertion, Reyes points out that these offenses are closely related in their nature and severity to the offenses of smuggling, harboring, or transporting an alien. Both offenses to which he points are felonies carrying maximum penalties of five and ten years respectively. In contrast, the offense of aiding and abetting another to illegally enter is a petty offense punishable by a maximum of six months' imprisonment which is upgraded to felony grade punishment of up to two years' imprisonment for subsequent offenses.[4]

Reyes contends that the concept of proportionality in sentencing would be violated if a prior petty offense effected the same adjustment to the guideline sentence as a prior ten year felony. His argument, however, is flawed. It is well-settled rule of statutory construction that where the language of a statute is clear and unambiguous, that language should be given its literal meaning. Under the plain meaning of the term "related offense," aiding and abetting the illegal entry of another is clearly related to the offense of smuggling, transporting, or harboring an illegal alien. It is difficult to imagine a situation in which aiding the entry of an illegal alien does not involve some aspect of smuggling, transporting, or harboring that person.[5]

Reyes argues that the term "related offense" is ambiguous, particularly in light

cate the presence of "one conviction for the petty offense of aiding and abetting the illegal *entry* of an alien," the district court's finding was not clearly erroneous. Record Vol. 1 at 28 (emphasis added).

Additionally, Reyes did not raise this complaint below; if he had, the details of the related offense could have been made part of the record. As the record stands, there is sufficient indicia to find a prior conviction for aiding/abetting illegal entry. *See, e.g., McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986).

4. It is not contended that Reyes has a conviction for a subsequent offense.

5. We also point out that the Guidelines' history supports our construction of this section. Initially, when adopted on April 13, 1987, the section in question provided that if "the defendant previously has been convicted of bringing illegal aliens into the United States, increase by 2 levels." The guideline was amended to its present form in June of 1988 with the deletion of this language, and the insertion of "smuggling, transporting, or harboring an unlawful alien, or a related offense," in lieu thereof. The Application Notes indicated that this amendment was not a content change, but was a correction of "a clerical error in the guideline."

of the fact that aiding or abetting is a petty offense rather than a felony. We do not agree. The focus in section 2L1.1(b)(2) is on the conduct of the defendant, not on the potential penalty for that conduct. Nowhere in the Commentary is there any indication that the related offense must carry as severe a penalty as the crime being punished. Nor do we agree with Reyes' contention that the rule of lenity should apply in this case. The principle that ambiguity in criminal statutes must be resolved in favor of lenity rests on the necessary prerequisite that the statute in question is in fact ambiguous. Here, we have determined that it is not. Additionally, the rule of lenity does not require a court to ignore the apparent intent of a provision. The interpretation propounded by Reyes would defeat the guideline's obvious purpose of punishing a recidivist more severely.

Finally, Reyes argues that the district court's comments at the sentencing hearing indicate that the judge applied a broader standard than provided for in the guidelines. The court noted that "with regard to the objection that's been made as to whether aiding and abetting an alien is a prior *immigration* conviction, or related offense, the court will overrule the objection." Record Vol. 5 at 3. Reyes argues that the governing guideline and commentary are not so broad as to encompass any immigration offense. It is not necessary for us to determine today the scope of offenses which fall under section 2L1.-1(b)(2). The prior conviction of aiding and abetting the entry of an illegal alien is within the scope of the "related offenses" contemplated by that section; no error in the application of the sentencing guidelines has been demonstrated.

## III. RULE 11 VIOLATION

■ As an alternative ground on appeal, Reyes argues that his guilty plea should be set aside because the trial court misinformed him of the possible maximum term of supervised release. In view of the fact that the court did not impose any term of supervised release, and because Reyes was informed of the correct maximum in the

presentence report, we conclude that no reversible error has been shown.

Federal Rule of Criminal Procedure 11 was implemented to assure that, when a defendant enters a plea of guilty, he does so voluntarily, and with an understanding of the charge and the consequences of his plea. Rule 11(c)(1) requires that, before accepting a guilty plea, a trial court must advise the defendant of and determine that the defendant understands "the maximum possible penalty provided by law, including the effect of any special parole term...." The underlying statute of conviction in the instant case, 8 U.S.C. § 1324(a)(1) provides a maximum penalty of imprisonment of not more than five years. The offense is therefore classified a Class D felony. *See* 18 U.S.C. § 3559(A)(1)(D). The guidelines indicate that a court must impose a term of supervised release to follow imprisonment when a prison term of more than one year is imposed. Sentencing Guidelines § 5D3.1(a). When a term of supervised release is ordered, the length of the term shall be at least two years but not more than three years for a defendant convicted of a Class C or D felony. Sentencing Guidelines § 5D3.2(b)(2).

At the plea proceedings, the trial court failed to properly advise Reyes of the maximum possible term of supervised release. The court mistakenly advised Reyes that he was subject to supervised release for a period of up to two years rather than three years. This error, however, does not require the setting aside of the guilty plea.

■ Rule 11(h) indicates that "[a]ny variance from the procedures required by this rule that does not affect substantial rights shall be disregarded." As this Court noted in *Coody v. United States*, 588 F.2d 1089, 1090 (5th Cir.1979), the failure to comply with Rule 11 is not fatal if that failure was not "likely to have been a material factor affecting the petitioner's decision to plead guilty." (quoting *Keel v. United States*, 585 F.2d 110, 116 (5th Cir.1978) (en banc) (Rubin, J., concurring). In the instant case, the misstatement could not have had any significant influence on the decision to plead guilty. Reyes was caught in the act of transporting illegal aliens. The presen-

tence report correctly stated the period of supervised release to which he was exposed. Additionally, the presentence report indicated the presence of a detainer against Reyes for deportation. Consequently, Reyes was not likely to be concerned about supervised release because of his probable deportation to Mexico after service of the term of imprisonment. Finally, we note that the district court did not impose any term of supervised release.

This is not a case such as *United States v. Molina–Uribe*, 853 F.2d 1193 (5th Cir. 1988). In *Molina*, a panel of this Court held that the district judge's failure to advise the defendant of the effect of a term of supervised release resulted in a deprivation of the defendant's substantive rights such that the guilty plea must be set aside. In the instant case, Reyes was fully informed of the effect of the term of supervised release. The only error was in a calculation of the time during which Reyes could be exposed to such. The misstatement was harmless, and the guilty plea should not be vacated.

## IV. CONCLUSION

The district court did not err in applying the sentencing guidelines and the misstatement which occurred at the plea proceedings was harmless. The conviction is affirmed.

AFFIRMED.