**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Cheryl Lea POPE, Defendant–Appellant.**

**No. 04–51008.**

United States Court of Appeals, Fifth Circuit.

June 6, 2006.

---

Joseph H. Gay, Jr., Asst. U.S. Atty.,
Mark Randolph Stelmach, Asst. U.S. Atty.
·(argued), San Antonio, TX, for Plaintiff–
Appellee.

Allen Francis Cazier (argued), San Antonio, TX, for Defendant–Appellant.

Before JOLLY, WIENER and
DENNIS, Circuit Judges.

WIENER, Circuit Judge:

Defendant–Appellant Cheryl Lea Pope
entered a conditional plea of guilty to a
charge of conspiracy to manufacture methamphetamine, reserving her right to appeal the district court's denial of her motion to suppress evidence obtained during
a two-stage evidentiary search of her residence.  In the first stage, officers executed
a search warrant purportedly issued for
the purpose of uncovering evidence of a
prescription-drug operation.  At the outset
of that stage, officers observed evidence of
a methamphetamine laboratory in plain
view.  That evidence formed the basis of a
second warrant issued to search for evidence of a meth lab, the second stage of
the search.

At the suppression hearing, the district
court ruled that the initial stage was unconstitutional because it was grounded in a
warrant issued on the basis of stale evidence.  The court nevertheless admitted
the evidence from that unconstitutional
search in reliance on the good faith exception to the exclusionary rule.  Under that
ruling, evidence from both stages of the
search of Pope's residence was admitted.

The parties do not contest the district court's determination that the first stage prescription-drug warrant was unsupported by probable cause. Instead, they dispute the district court's application of the good faith exception to the exclusionary rule to the facts of this case. Specifically, Pope contends that the *first* stage of the search does not qualify under the good faith exception to the exclusionary rule, so that she is entitled to have all evidence seized during both stages of the search suppressed. The parties agree that if we reverse the district court and hold that the initial stage of the search does not qualify under the good faith exception to the exclusionary rule, Pope must be acquitted. We so hold, and thus reverse and vacate Pope's conviction and sentence.

## I. FACTS AND PROCEEDINGS

On June 25, 2003, Officer Michael Baird bought six prescription pills for ten dollars from Pope as part of an undercover investigation. There is no evidence in the record that, after that single purchase, either he or any other law enforcement personnel pursued the prescription-drug matter. Then, 78 days later, Baird received a tip having nothing to do with prescription drugs, viz., that Pope was cooking methamphetamine. Baird acknowledges that he knew that he did not have probable cause to obtain a search warrant to enter Pope's home in search of evidence of a meth lab. To circumvent that hurdle, Baird immediately began drafting an evidentiary search warrant affidavit—the first in his career—relating solely to the moribund prescription-drug issue. Despite having done nothing about the prescription-drug buy for 78 days, Baird stayed at work past midnight preparing a prescription-drug search warrant affidavit, slept a few hours, then timed his trip to a state magistrate's home to arrive at seven o'clock the next morning.

Crucially, Baird intentionally failed to disclose to the magistrate the true purpose for which the officer wanted to search Pope's house: solely to look for and seize evidence of a meth lab. Instead, he attested under oath that he was applying for "an evidentiary search warrant ... *The purpose* is to obtain evidence of a crime that has already been committed," i.e., evidence of the stale prescription-drug buy.[1] Only by this subterfuge was Baird able to obtain a warrant to search Pope's home for the undisclosed purpose of seeking evidence of a meth lab.

Significantly, Baird did not hand off the tainted warrant to other officers; rather, he personally went to Pope's home to execute the faux search for prescription drugs accompanied by a team of officers fully dressed in the kind of protective gear used to search for meth labs. When, as anticipated, they found evidence of a meth lab in plain view, Baird immediately left the premises to obtain a second warrant, this one to search for additional evidence of the meth lab. Notably, there is no evidence in the record that the police ever looked for, much less found, any evidence of the prescription-drug crime for which Baird had obtained the initial warrant.

Pope sought to suppress all the evidence because the facts in the affidavit on which the prescription-drug warrant was issued were stale, depriving Baird of probable cause to search Pope's residence for anything. Pope also insisted that, under the particular facts of this case, the government could not rely on the good faith exception to the exclusionary rule. When Pope's counsel questioned Baird as to his actual purpose of securing the prescrip-

---

1. Emphasis added.

tion-drug search warrant, the officer's testimony confirmed that he secured the warrant because he was tipped that Pope was conducting a meth cook.

The district court correctly found that (1) the initial search warrant was based on a sale of prescription drugs that occurred 78 days before Baird obtained the warrant, (2) *the purpose for which the magistrate issued the warrant* was not to search for evidence of a meth lab, but solely to search for evidence related to the stale prescription-drug buy,[2] and (3) Baird *consciously withheld* all information about the meth lab and his suspicions in that regard, because *he knew that he did not have probable cause* for a warrant to search for evidence of a meth operation. Specifically, the district court found that Baird "had received a tip that [Pope] was cooking methamphetamine ... Because he did not believe he had probable cause to search the residence for evidence of meth production, Baird did not tell the state district court judge about his suspicions." The court was also correct in holding that the prescription-drug warrant *lacked probable cause* because the information regarding the prescription-drug sale was stale.

Despite all this, the court went on to deny Pope's motion to suppress, purporting to rely on the good faith exception to the rule excluding evidence obtained in a search grounded in an invalid warrant. In so doing, the court held that none of the exceptions to the good faith exception applied.

## II. ANALYSIS

### A. Standard of Review

■ When a district court grants or denies a motion to exclude evidence, we review that court's factual findings—both explicit and implicit—for clear error.[3] We review its conclusions of law *de novo*.[4]

### B. Discussion

#### 1. Law

■ The exclusionary rule requires courts to suppress evidence seized on the basis of a warrant that is unsupported by probable cause.[5] The purpose of the exclusionary rule is to deter unlawful police conduct. As the Supreme Court has repeatedly observed:

> The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of the accused.[6]

The exclusionary rule is not without limits, however. As the Court cautioned, "[w]here the official action was pursued in complete good faith, however, the deter-

---

2. The court, in its factual findings, highlighted Baird's testimony that "[t]he search *warrant* wasn't intending to go find methamphetamine. The *intent* of the search *warrant* was to find mere evidence of a previous buy" (emphasis added).

3. *United States v. Reyes–Ruiz*, 868 F.2d 698, 701 (5th Cir.1989) (noting that we review express and implied factual findings for clear error).

4. *United States v. Alvarez*, 127 F.3d 372, 373 (5th Cir.1997).

5. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

6. *United States v. Leon*, 468 U.S. 897, 919, 104 S.Ct. 3405, 82 L.Ed.2d 677 (quoting *United States v. Peltier*, 422 U.S. 531, 539, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975)).

rence rationale loses much of its force." [7] Therefore, if the officers obtained the evidence "in objectively reasonable good-faith reliance upon a search warrant," the evidence is admissible "even though the affidavit on which the warrant was based was insufficient to establish probable cause." [8] The "good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." [9] In conducting the good faith inquiry, the court may examine "all of the circumstances" surrounding the issuance of the warrant. [10]

"[S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." [11] The Supreme Court noted in *Leon* that "it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." [12] Among the "circumstances" to which the Court referred are those in which the magistrate issued a warrant in reliance on a deliberately or recklessly false affidavit. [13] This is because a reasonably well-trained officer with objective knowledge that a search warrant has been issued on the basis of (1) deliberate or reckless falsehoods, (2) material omissions, or (3) both, would conclude that the search is unlawful under the magistrate's flawed authorization.

## 2. Merits

*"[I]t is one thing to admit evidence innocently obtained by officers who rely on warrants later found invalid due to a magistrate's error. It is an entirely different matter when the officers are themselves ultimately responsible for the defects in the warrant."* [14]

■ As noted, the district court held that "the good faith exception applies to the ... search warrant." In its conclusions of law, the district court specified the circumstances in which the good faith exception did not apply, including "when the magistrate or state judge issues a warrant in reliance on a deliberately false affidavit." And the government expressly argued to the district court that "[t]here was no evidence of deliberate recklessness ... in the affidavit." Pope contends that the good faith exception does not apply because Baird's representation in his search warrant affidavit that *"the* purpose [of the search] is to obtain evidence of a crime that has already been committed," [15] i.e. the 78–day–old drug-buy, was deliberately or recklessly false. This, according to Pope, is because the officer's conceded—but undisclosed—purpose of the search was only to uncover evidence of the meth lab.

Although the district court failed to make an express finding that Baird did not prepare a deliberately or recklessly false

---

**7.** *Id.* (quoting *Peltier*, 422 U.S. at 539, 95 S.Ct. 2313) (emphasis added).

**8.** *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir.1992).

**9.** *Leon*, 468 U.S. at 922, 104 S.Ct. 3405 n. 23.

**10.** *Id.; accord United States v. Payne*, 341 F.3d 393, 400 (5th Cir.2003).

**11.** *Leon*, 468 U.S. at 918, 104 S.Ct. 3405.

**12.** *Id.* at 922–23, 104 S.Ct. 3405.

**13.** *Id.* at 923, 104 S.Ct. 3405.

**14.** *See United States v. Reilly*, 76 F.3d 1271, 1281 (2d Cir.1996).

**15.** Emphasis added.

affidavit, such a finding is necessary to its holding that the good faith exception applied. "Where the trial court makes no direct reference to a claim but must necessarily have found a certain fact, the appellate court will imply such a finding" and may review the implied factual finding.[16] Review of the record, including (1) Baird's testimony at the suppression hearing, (2) the circumstances surrounding the warrant application process, and (3) the execution of the search, reveals that this implicit factual finding is clearly erroneous. Instead, the contrary conclusion is revealed: The record establishes that (1) Baird deliberately lied when he stated to the magistrate under oath that the purpose of the search was to uncover evidence of the prescription-drug buy, and (2) Baird deliberately omitted key material information when he failed to inform the magistrate of the actual purpose of the search and of the informant's tip. Moreover, because the officer who would now cloak himself in the good faith exception is Baird, the very same officer who perpetrated the deliberate falsehoods and omissions, we are satisfied that Baird had objective knowledge of the prescription-drug warrant's illegality.

### (a) Baird's Testimony at the Suppression Hearing

We know from Baird's own lips that he lied to the magistrate. When Pope's counsel asked Baird why he got the search warrant when he did, Baird responded that "[w]e had received information several times that Ms. Pope was cooking methamphetamine. We received information that, at that time, there was a possibility that she was cooking methamphetamine." And, Baird temporized, "[w]e had informa-

tion that did not rise to the level of probable cause that they were cooking methamphetamine." On hearing this testimony, Pope's counsel asked:

Q: So you had this information which you believed fell short of probable cause, so in lieu of that, you sought an evidentiary search warrant on the basis of the transaction that had occurred 78 days ago?

A: I applied for a search warrant, for an evidentiary search warrant for evidence of a previous narcotics purchase.

Q: Were you instructed to do that by one of your superiors?

A: No, sir. It was my idea.

When Baird further emphasized his suspicion that Pope was cooking meth at the time that he applied for the warrant, Pope's counsel asked him, "So why not tell the judge?" Baird responded, "I did not want to—I wanted the affidavit to stand on its own." As Baird explained during his testimony, "[t]he search *warrant* wasn't intending to go find methamphetamines. The intent of the *warrant* was to find evidence of a mere previous buy [of prescription drugs]."[17] These statements confirm that searching for evidence of the prescription-drug operation was *not* the purpose, or even *a* purpose, for which Baird sought the warrant at all. Instead, stating in his affidavit that the purpose of the search was for evidence of the prescription-drug operation was a tactical maneuver Baird used to avoid the probable cause prerequisite that, *by his own admission,* he could not satisfy.

Notably, there is more than Baird's affirmative testimony that leads us to this conclusion. What Baird *failed to say* dur-

---

16. *Reich v. Lancaster,* 55 F.3d 1034, 1057–58 (5th Cir.1995); *see also Clinkenbeard v. Cent. S.W. Oil Corp.,* 526 F.2d 649, 651–52 (5th Cir.1976) (implying a factual finding that the district court did not state, but was necessary to its conclusion).

17. Emphasis added.

ing the suppression hearing is equally as revealing. When asked whether he seized *anything* from the residence, Baird replied, "Yes. We seized plain view evidence of a methamphetamine lab." He did *not* testify that he seized *anything* relating to prescription drugs. In fact, despite repeated opportunities to testify that the real purpose of the search was to uncover prescription drugs, Baird *never* testified directly to that effect. Indeed, although Baird testified that "[w]e had an ongoing methamphetamine investigation with Ms. Pope and her family," he *never* stated—nor is there any evidence in the record—that the prescription-drug investigation extended beyond the 78–day old purchase of June 25.

Baird's suppression hearing testimony absolutely puts the lie to his *sworn statement* in the warrant affidavit that the purpose of the search was to find evidence of the previous prescription-drug buy. A careful review of the entire record makes clear that the only purpose of the search was to find evidence of the suspected meth lab. Accordingly, the district court clearly erred when it implicitly found that Baird did not deliberately or recklessly mislead the magistrate. At the same time, the district court's erroneous factual finding led to that court's legal error in holding that Baird's two-warrant search fell within the good faith exception.[18]

#### (b) The Warrant Application

Even if Baird's testimony were not enough, the undisputed circumstances surrounding Baird's warrant *application* further confirm our conclusion. As soon as Baird was tipped that Pope was cooking a batch of meth, he remained on the job and worked past midnight preparing the deceptive warrant affidavit, then, by design, arrived at the issuing magistrate's house at seven o'clock in the morning to get the magistrate to sign the warrant. Obviously, none of Baird's overtime rushing would have been necessary if gathering evidence about the old undercover prescription drug buy were the true purpose for obtaining the warrant: Alone, the urgency with which Baird confected the warrant application immediately after receiving the meth tip further belies his sworn statement to the magistrate that the purpose of the search was to uncover evidence of the prescription-drug buy.

#### (c) The Execution of the Search

Even if Baird's testimony and the circumstances of the warrant application were not enough, the undisputed circumstances surrounding the *execution* of the search of Pope's home confirm beyond cavil that the purpose for obtaining the warrant was to search for a meth lab. First, Baird and his fellow officers arrived to execute the search *wearing protective gear* in anticipation of finding a meth lab. Second, once they found plain-view evidence of the meth lab during the initial protective sweep, Baird and a fellow officer left the premises to prepare another affidavit and obtain a second search warrant, this one *for the meth lab*. As already noted, there is no evidence before us to suggest that the officers ever looked for—much less found—indicia of a prescription-drug operation. This is confirmed by record photographs taken in the process of executing the search.[19] Ultimately, this was

---

**18.** *Compare United States v. Breckenridge,* 782 F.2d 1317, 1322 (5th Cir.1986)(declining to find that the warrant affidavit contained deliberately or recklessly false information because the officer's testimony at the suppres-

sion hearing was consistent with the warrant affidavit).

**19.** The photographs depict (1) an officer dressed in gear designed to protect the officer

an obviously pre-planned "warrant two-step" in which Baird misled the magistrate to gain access to a residence for which there was no probable cause to search.

### (d) Conclusion on the Merits

The good faith exception is not an instrument that law enforcement may use to manipulate the warrant application process and thereby circumvent the constitutional requirement of probable cause. As the Second Circuit poignantly observed, the good faith exception "is not an excuse if the police are not frank with the magistrate in the proceedings to obtain the warrant."[20] There is simply no way for this case to be shoe-horned into the good faith exception to the exclusionary rule: *Under these discrete facts*, a reasonably well-trained officer in Baird's exact circumstances would have known that the search was illegal despite the magistrate's authorization. This is because the attesting officer obtained the warrant by way of (1) a deliberate falsehood, i.e., the statement that the purpose of the search was to uncover evidence of a prescription-drug operation, and (2) a deliberate omission of material fact, i.e., that the actual purpose of the search was to uncover evidence of a meth lab. As the Supreme Court has unequivocally explained, an officer would have "no reasonable grounds for believing that the warrant was properly issued ... if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or

would have known was false except for his reckless disregard of the truth."[21]

Further, it is critical that we suppress evidence obtained pursuant to a warrant that was procured only by misleading the magistrate as to the purpose of the intended search. This is because a judicial officer cannot properly perform his gate-keeping function of making the probable cause determination if the stated *object* of the requested search is false or incomplete: The *facts* supporting probable cause and the *object* of the search are inextricably linked in the probable cause calculus. Thus, for a judicial officer to determine properly whether probable cause exists to conduct a search, law enforcement must forthrightly inform such magistrate of, *inter alia*, the actual purpose of the search.

Finally, we cannot overemphasize the fact that the very officer who here claims *good faith reliance* on the warrant is the self-same officer who duped the magistrate with *that* officer's tainted affidavit, thus producing the equally tainted warrant on which the deceitful officer now seeks to rely. This is precisely the type of case in which suppression must be granted to serve the deterrent purpose of the exclusionary rule: Exclusion of the evidence here should ensure that future "Officer Bairds" will disclose *fully* and *truthfully* all the pertinent information that they are duty-bound to supply judicial officers when seeking search warrants.[22] As this case

from hazardous materials, (2) meth lab equipment on Pope's kitchen counter, (3) a "burn barrel", (4) charred remains of pseudoephedrine blister packs, (5) a trash can likely containing materials used in the manufacture of meth (the contents of the trash can are difficult to discern from the photograph, but Baird's testimony identifies such items in a trash can) (6) a school bus that Pope's son converted into a residence, (7) license plates,

and (8) the front of Pope's residence and the yard.

**20.** *Reilly*, 76 F.3d at 1281.

**21.** *Leon*, 468 U.S. at 923, 104 S.Ct. 3405.

**22.** *See United States v. Barth*, 26 F.Supp.2d 929, 941–42 (W.D.Tex.1998) (declining to apply the good faith exception because to do so

does not fit within the good faith exception to the exclusionary rule, suppression is the appropriate remedy.

### 3. The Dissent

With respect, we see the dissent as mischaracterizing the law, the record, and this opinion. First, the dissent relies entirely on warrantless pretextual traffic stop jurisprudence in its critique, viz., *Whren v. United States*.[23] Crucially, the dissent fails to address the palpable distinction between pretextual vehicle searches and the searches of private residences pursuant to a judicially authorized warrant, the kind of searches that lie at the core of the Fourth Amendment's protection. Traffic stop cases such as *Whren* stand for the principle that, *when law enforcement has a legally justifiable* (1) presence at the scene, *and* (2) reason to stop a vehicle, the presence of the officer's ulterior or additional motive for that stop neither strips law enforcement of its legal justification for the warrantless stop nor subjects the fruits of the search to suppression.[24] The *Whren* court refused to undertake the inquiry into whether an officer plausibly had the proper state of mind to justify a traffic stop because his actions were *legally justified from the outset* by probable cause.[25]

In the instant case, Baird's actions *were not legally justified from the outset* because he lied in and omitted material information from the affidavit with which he secured the initial warrant. Without a valid warrant, he had no justifiable reason to be at Pope's residence in the first place. Absent any legal justification to enter and search Pope's residence, all that remains is Baird's objectively proved purpose of searching Pope's residence for the meth lab. If we were to rely on traffic stop jurisprudence to resolve the legality of this search, *Delaware v. Prouse*[26] would be more appropriate. There, an officer with neither probable cause nor reasonable suspicion stopped a vehicle and, when he reached the vehicle, saw marijuana in plain view and seized it.[27] The Court held that suppression was required because the officer lacked probable cause or reasonable suspicion to stop the car in the first place, without which there could be no "plain view" exception.[28]

The dissent also accuses this writing of advancing a *subjective* determination on the basis of what we perceive to be Officer Baird's state of mind. But, we obviously are not conducting a *subjective* inquiry into Officer Baird's mindset: Quite to the contrary, we are *objectively* determining whether Baird deliberately or recklessly made false statements or material omissions, or both, that misled the magistrate into signing the search warrant. To do so, we properly consider the officer's statements under oath in his affidavit, the sworn testimony he provided at the suppression hearing, and other relevant evidence. Only then must we consider whether, under the entirety of these circumstances, a reasonably well-trained officer would *objectively* and in good faith rely on the search warrant as legally issued. Ours is a purely objective inquiry; there is simply no other way to determine whether

would condone an FBI policy that prohibited full and frank disclosures to members of the judiciary and the Justice Department).

23. 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

24. *Whren*, 517 U.S. at 812, 116 S.Ct. 1769.

25. *Id.* at 814, 116 S.Ct. 1769.

26. 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

27. *Id.* at 651, 99 S.Ct. 1391.

28. *Id.* at 663, 99 S.Ct. 1391.

an officer has deliberately or recklessly misled a magistrate. Therefore, the question here is not "What was Officer Baird's subjective state of mind?", but rather "Would a reasonably well-trained officer rely on a warrant that he personally obtained by deceit?" As the Supreme Court explained in *Leon*, the answer is no. Indeed, to hold otherwise would be an insult to every reasonably well-trained law enforcement officer.

Further, even though we need not debate the question here because our inquiry is objective, there is solid jurisprudence indicating that *actual good faith* is a threshold inquiry when determining whether the *good faith* exception to the exclusionary rule applies, despite the dissent's insistence to the contrary. A solid line of cases holds that there is both a subjective and an objective component to the good faith exception. In *United States v. Williams,*[29] a pre-*Leon* case, this court held that there is a good faith exception to the exclusionary rule, and that to fit within the exception the officer must be (1) in *actual* good faith, and (2) acting in *objectively* reasonable reliance on the warrant. *Leon* did not overrule this dual standard. Indeed, *Leon* identified circumstances in which the good faith exception would not apply that turn on an officer's actual good faith. For example, the Court noted that the good faith exception would not apply if an officer obtained a search warrant with a "bare bones" affidavit, and then assigned the search to other officers who were unaware of the warrant affidavit's deficiencies.[30] Similarly, an officer who has engaged in magistrate shopping may not be entitled to the good faith exception to the exclusionary rule.[31]

Since *Leon*, we have observed that a police officer's actions must be in both subjective and objective good faith to come within the good faith exception.[32] The Sixth Circuit has explicitly recognized that there are two components to the *Leon* good faith inquiry: First, whether the police actually acted in good faith, and second, whether police reliance on the warrant was objectively reasonable.[33] Ultimately, the dissent relies heavily on the fallacious principle that actual good faith is irrelevant to the good faith exception to the exclusionary rule. Although that proposition is not at issue here, both law and logic indicate that actual good faith is indeed a relevant consideration when deciding whether to apply the good faith exception to the exclusionary rule.

The dissent further attacks our conclusion that Officer Baird lied as engaging in "appellate fact-finding." To that we have two responses. First, we would respectfully remind the dissent that our purpose is to review the district court's factual findings. The district court's failure expressly to articulate its finding that Baird did not deliberately or recklessly mislead the magistrate does not insulate it from review on appeal for clear error: Such a

---

**29.** 622 F.2d 830, 841 n. 4a (5th Cir.1980).

**30.** 468 U.S. at 922, 104 S.Ct. 3405 n. 24.

**31.** *Id.* at 922, 104 S.Ct. 3405 n. 23.

**32.** *United States v. Benavides*, 854 F.2d 701, 702 (5th Cir.1988) ("The execution of the warrant in subjective and objective good faith brings the actions of the officers within the good-faith exception to the exclusionary rule.") (citing to *Leon* and *Williams*); *see also United States v. McQuagge*, 787 F.Supp. 637,

650–51 (E.D.Tex.1991) (recognizing that the good faith exception has two components: the requirement that the officers act objectively reasonably and the requirement that they act in subjective good faith, and ultimately suppressing the evidence because the officers did not act in subjective good faith).

**33.** *United States v. Leake*, 998 F.2d 1359, 1367 (6th Cir.1993).

finding is indispensable to the court's legal conclusion that the good faith exception applied. Accordingly, the entire record is before us on appeal, and we are entitled to rely on that record in determining whether the district court erred factually and legally. Doing so amounts to conscientious review—not "appellate fact-finding."

Second, the dissent attacks only our conclusion that Officer Baird lied—it does not challenge the fact that Officer Baird omitted key material information, i.e., the purpose of his search (or, as the dissent characterizes it, Baird's "unstated, underlying motive.").[34] Thus, at the very least, the dissent would have us confect the following rule: A law enforcement officer may omit from his affidavit key material information that pertains to the purpose of a search in securing a warrant, then cynically "throw himself on the mercy" of the good faith exception to the exclusionary rule—never mind that the entire affidavit, *including the officer's statement of purpose*, is a declaration made under oath before a judicial officer. The dissent points to no law to the effect that an officer may omit critical material information from his warrant affidavit and then seek shelter under the good faith exception. This is because there is none: The law is well established that omitting critical information from the warrant affidavit deprives the officer of the benefit of the good faith exception.[35]

(This is likely a primary reason why the dissent relies singularly and without explanation on the inapposite analogy of the warrantless pretextual traffic stop to advance its view.)

Additionally, donning blinders to an officer's false and misleading statement of purpose in his warrant affidavit would be untenable because, as noted above, a judicial officer cannot properly perform his gate-keeping function in making the probable cause determination if the stated *object* of the search is false or materially incomplete. Furthermore, disregarding a significant difference between the stated purpose and the actual purpose of a search ignores the Supreme Court's specific instruction in *Leon* that "in making [the good faith] determination, *all* of the circumstances . . . may be considered."[36]

Finally, the dissent argues that we should not consider whether Officer Baird is entitled to the *Leon* good-faith exception because, according to the dissent, it was not raised below and the district court "did not think for a moment" about it.[37] Review of the record, however, reveals that the issue of Officer Baird's deceptive behavior was before the district court. Specifically, Pope argued in her motion to suppress that the *Leon* good-faith exception did not apply, and the government argued in response that "[t]here was no

34. *Infra* at 350.

35. *See, e.g., United States v. Davis,* 226 F.3d 346, 351 (5th Cir.2000) (noting that "[t]he necessary falsehood can be perpetrated by omission as well as commission" in applying *Leon* ).

36. 468 U.S. at 922, 104 S.Ct. 3405 n.23 (emphasis added).

37. We note that the dissent points to Pope's counsel's statement at oral argument that Baird thought he was doing the right thing to bolster its conclusion that Baird was in good

faith under the law. If not worse, the dissent's reliance on counsel's *subjective* opinion and Baird's *subjective* belief that he was doing the right thing is patently inconsistent with its vociferous objection to any subjective component to making the good faith determination. More importantly, when not isolated out of context, it is obvious that Pope's counsel was *not* conceding that Baird was in good faith *under the law.* As counsel correctly explained during the suppression hearing, "good faith [cannot] be equated to the uninformed, inexperienced, naive belief that you are doing the right thing."

evidence of deliberate recklessness ... in the affidavit." At the suppression hearing, Pope highlighted Officer Baird's deceptive behavior in securing the warrant and, in closing, explained that:

all of [the statements in the affidavit] are predicated upon violations of controlled substance or marijuana violations, and that's not what we have here. They are making the jump from this relatively insignificant delivery of six pills for $10 to a major drug dealer case, and there is just nothing in the affidavit that would permit somebody to make that jump ... That is our argument, really.

Accordingly, the issue whether Officer Baird deliberately or recklessly disregarded the truth or omitted information was sufficiently raised for the district court's consideration.

## III. CONCLUSION

The entire search conducted at Pope's residence lacked probable cause. In executing that search, Officer Baird cannot, in good faith, reasonably rely on the flawed warrants that facially authorized it—especially when his personal actions directly caused the vices in those warrants. Accordingly, we reverse Pope's conviction and vacate her sentence.

REVERSED; SENTENCE VACATED.

E. GRADY JOLLY, *Circuit Judge,* dissenting:

I respectfully dissent because I believe the *Leon* good-faith exception applies, because the majority opinion reflects an erroneous view of the record, and because the majority engages in appellate fact-finding. As an appellate fact-finder, the majority

recharacterizes the officer as a "liar," contradicting not only the district judge but also the defendant's appellate counsel, who said at oral argument that he did not doubt the officer's good faith and that the officer believed he was doing the right thing.

No one questions that Officer Baird, in applying for and executing the original search warrant, believed that probable cause supported a search warrant for evidence of illegal prescription-drug sales. Baird applied for a warrant on that basis alone,[1] and the magistrate issued a warrant on that basis alone. Baird's "reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant," *United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (internal quotations omitted), was objectively reasonable. This is what the District Court properly found as fact and law.

To upset this finding of the District Court, the majority, taking liberties with the record, contends that Baird's application for and execution of the warrant was in bad faith because he concealed from the magistrate judge his "true purpose" and allegedly his *sole* motivation in seeking the warrant, namely, his anticipation of finding plain-view evidence of a methamphetamine cook taking place on the premises. In short, the majority argues that Baird's belief that probable cause supported the search for prescription-drug evidence is irrelevant because his subjective motive in seeking the warrant was to search for methamphetamines for which there was no probable cause. However, the Supreme Court repeatedly has emphasized that the subjective intent of the officer is not to be considered:

---

1. Baird recognized the lack of probable cause to search for methamphetamines and wanted

the warrant for prescription-drug evidence to "stand on its own."

Not only have we never held, outside the context of inventory search or administrative inspection ..., that an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment; but we have repeatedly held and asserted the contrary. In *United States v. Villamonte–Marquez*, 462 U.S. 579, 584, n. 3, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983), we held that an otherwise valid warrantless boarding of a vessel by customs officials was not rendered invalid "because the customs officers were accompanied by a Louisiana state policeman, and were following an informant's tip that a vessel in the ship channel was thought to be carrying marihuana." We flatly dismissed the idea that an ulterior motive might serve to strip the agents of their legal justification. In *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), we held that a traffic-violation arrest ... would not be rendered invalid by the fact that it was "a mere pretext for a narcotics search," id., at 221, 94 S.Ct. 467, n. 1; and that a lawful postarrest search of the person would not be rendered invalid by the fact that it was not motivated by the officer-safety concern that justifies such searches, see *id.*, at 236, 94 S.Ct. 467. See also *Gustafson v. Florida*, 414 U.S. 260, 266, 94 S.Ct. 494, 38 L.Ed.2d 427 (1973). And in *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), in rejecting the contention that wiretap evidence was subject to exclusion because the agents conducting the tap had failed to make any effort to comply with the statutory requirement that unauthorized acquisitions be minimized, we said that "subjective intent alone ... does not make otherwise lawful conduct illegal or unconstitutional." We described *Robinson* as having established that "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." 436 U.S. at 136, 138, 98 S.Ct. 1717.

*Whren v. United States*, 517 U.S. 806, 812–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (parallel citations omitted).[2] In other words, Baird's subjective motive is irrelevant here. An appellate court's finding of fact as to Baird's true purpose is, as always, inappropriate.

To be sure, the majority's inquiry and fact-finding concerning Baird's one true motive demonstrate the wisdom of eschewing such inquiries. Baird's affidavit is mischaracterized as containing "*deliberate falsehoods,*" and it is suggested that "we know from Baird's own lips that he lied to the magistrate." Neither assertion is supported by the record. Baird's seven-page affidavit contains a single, short sentence relating to purpose that is not inconsistent with an additional, unstated, underlying motive: "The purpose [of the evidentiary search warrant] is to obtain evidence of a crime that has already been committed, as will be specified later below," i.e., the illegal sale of prescription drugs. Even accepting the inference of a hidden motive, the sentence plainly is not a falsehood,

**2.** The majority opinion faults any reliance on traffic-stop cases, but the passage quoted from *Whren* plainly discusses a principle not limited to traffic stops but applicable in all Fourth Amendment contexts. The cases cited by the Court involve not just traffic stops but also wiretaps and the boarding of maritime vessels. The Supreme Court recently reiterated, in a case far removed from traffic stops, that "under the Fourth Amendment ... [t]he officer's subjective motivation is irrelevant." *Brigham City v. Stuart*, —— U.S. ——, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006).

deliberate or reckless. And there is nothing—I repeat nothing—in the record suggesting that Baird admits lying to the magistrate. Just the opposite. Baird testified, and reaffirmed on cross-examination, that the magistrate read the affidavit carefully, asked no questions of the officers, and received no evidence not in the affidavit. Baird testified only that in seeking the warrant when he did, he was motivated by his suspicion, based on an informant's tip, that a methamphetamine cook was taking place. He did not concede that he was "only interested" in evidence of the meth lab. Nothing in the record or suppression-hearing transcript supports the accusation that Baird "lied to the magistrate," let alone that he admitted to doing so. As the majority notes, the Government expressly argued to the District Court that "[t]here was no evidence of deliberate recklessness ... in the affidavit." And even Pope's attorney at oral argument stated, "subjectively, I don't doubt this officer's good faith; I'm sure he thought he was doing the right thing."

The majority's exaggerations of the record to brand the officer as a liar are presumably found necessary because *Leon* "confine[s] [the good-faith inquiry] to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." 468 U.S. at 922, 104 S.Ct. 3405 n. 23. To reason that the good-faith exception does not apply, the majority must characterize the affidavit as an outright and *admitted* lie in order to cast its analysis as a "purely

objective inquiry" into the motive of the officer. Respectfully, the analysis is anything but objective.[3] Moreover, it is appellate fact-finding.

At the very least, the majority should remand this case to allow the District Court to address, and make findings of fact concerning, Pope's claim on appeal that the warrant affidavit was recklessly false. The record reveals that the issue upon which the majority reverses the District Court's finding of good faith was never before the District Court. Even Pope's own motion to suppress cursorily addresses the good-faith exception in a short section arguing only and simply that the evidence should be suppressed because the warrant was supported only by a "bare-bones" affidavit, i.e., an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923, 104 S.Ct. 3405. Nothing in the record indicates that Pope argued to the District Court, before or after the suppression hearing, that the affidavit was recklessly false. The District Court properly rejected the bare-bones-affidavit argument, but because it was not presented with the claim of reckless falsehood in the supporting affidavit, it did not even think for a moment about the issue. Although the Government has not objected to the Defendant's untimely raising the issue on appeal, the majority has no license to engage in fact-finding and to seize upon this tardy and inappropriate argument to reverse the District Court on grounds not argued below.[4]

**3.** In fact, the majority's description of its inquiry as purely objective is circular. The majority states, "the question is not 'What was Officer Baird's subjective state of mind?', but rather 'Would a reasonably well-trained officer rely on a warrant that he personally obtained by deceit?'" But the majority can only conclude that Baird obtained the warrant by deceit after first determining the disputed question of Baird's subjective state of mind.

**4.** The majority opinion ends with a reference to a passage in the record in which Pope supposedly "highlighted Officer Baird's deceptive behavior in securing the warrant."

352

In sum, I respectfully dissent to the reversal of the District Court because of the majority's misapplication of the law, its mischaracterization of the record, and its engagement in appellate fact-finding.

The majority again misreads the record. The quoted passage *was not* directed to Baird's alleged desire to find evidence of methamphetamines, because that issue was not raised below at all; instead, Pope was arguing that her single sale of a mere six pills was insufficient to support a search for evidence of dealing (in those same drugs) on a greater scale. The quoted passage is not a reference to deceptive behavior, misrepresentation, or omission relating to Baird's request for a warrant, and certainly suggests no reason to question Baird's good-faith reliance on the magistrate's finding of probable cause, which is simply a determination that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Grubbs,* —— U.S. ——, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006) (citing *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The erroneous citation of this passage demonstrates why an appeals court should not attempt to relitigate an issue forfeited below.